Argued and submitted April 15, decision of Court of Appeals affirmed in part and reversed in part; judgment of circuit court reversed with respect to defendant Wood's convictions for resisting arrest and assaulting a public safety officer; in all other respects, judgments of circuit court affirmed; Defendant Wood's case remanded to circuit court for further proceedings October 8, 2009

STATE OF OREGON,
*Respondent on Review,*

*v.*

JESSICA LEE OLIPHANT,
fka Jessica Lee Rilatos,
fka Jessica Lee Bayya,
fka Jessica Lee Fairman,
aka Jessica Lee Olson,
*Petitioner on Review.*

(CC 050245; CA A131381 (Control))

STATE OF OREGON,
*Respondent on Review,*

*v.*

FRANCISCA DARLENE RILATOS,
*Petitioner on Review.*

(CC 050246; CA A131382)

STATE OF OREGON,
*Respondent on Review,*

*v.*

KENNETH ROBERT WOOD,
*Petitioner on Review.*

(CC 050824; CA A131519)
(SC S056404)
(Cases Consolidated)

218 P3d 1281

Robin A. Jones, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioners on review. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Tiffany Keast, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

GILLETTE, J.

## GILLETTE, J.

This criminal case arose out of a jaywalking stop that degenerated into a mutual affray involving three defendants and two police officers. During the defendants' ensuing trial for resisting arrest, assaulting a police officer, and other charges, all the defendants raised the defense of self-defense. The trial court refused to give a special instruction that the defendants had requested and gave other instructions to which the defendants had excepted. The defendants were convicted of most of the charged offenses. They appealed their convictions to the Court of Appeals, which affirmed without opinion. *State v. Oliphant*, 221 Or App 384, 190 P3d 495 (2008). We allowed defendants' petition for review to consider the parameters of a person's right to use physical force against a police officer in self-defense during an arrest and how a jury should be instructed with respect to that self-defense claim. For the reasons set out below, we reverse in part and affirm in part the decision of the Court of Appeals and the judgment of the circuit court, and remand the case to the circuit court for further proceedings.

Most of the following facts are undisputed, although their legal significance is much debated. We take our statement primarily from the trial testimony of the police officers principally involved in the affray and from a transcript of the recording of the events taken by a patrol car recording device. When discussing defendants' requested instructions, we view the facts in the light most favorable to defendants. *See Hernandez v. Barbo Machinery Co.*, 327 Or 99, 101 n 1, 957 P2d 147 (1998) (court views evidence in the light most favorable to the establishment of the facts necessary to require giving the requested instruction).

On December 21, 2004, sometime before 9:00 p.m., Officer Gulbranson was on patrol in Toledo, Oregon, when he saw defendant Francisca Rilatos enter a crosswalk and start walking across the street. Gulbranson was acquainted with Rilatos, who was then 19 years old, five feet, two inches tall, and known by Gulbranson to have a volatile temper. Gulbranson testified that he saw Rilatos leave the crosswalk and walk diagonally to the sidewalk in front of the apartment

building where she lived, thereby committing the offense of "improper positioning of a pedestrian in the highway." Although Gulbranson testified that he had stopped five or six car lengths before the crosswalk to allow her to cross safely, Rilatos apparently perceived him to have been speeding through the crosswalk and began yelling at him to slow down and shouting profanities at him.[1] At that point, Gulbranson decided to investigate the crime of disorderly conduct. He contacted the police dispatcher to say that he would be "out with Cissy Rilatos." Gulbranson also radioed another police officer, Miller, who also knew Rilatos, requesting "code 3" backup, which is a call for emergency assistance when an officer is in dire need of backup because of an injury or threat to the officer's life.

Gulbranson activated the flashing lights on his patrol car, which automatically turned on the video and audio recording devices that captured the events at issue here. He then got out of the car and called out Rilatos's name, "Cissy Rilatos." She replied, "I was in the crosswalk," and continued walking toward her apartment. The officer called Rilatos's name again and ordered her to "come here," "get over here," and "get over here right now." Rilatos refused, shouting, "You know, I was in the crosswalk." Gulbranson persisted, shouting, "Get over here," to which Rilatos responded, "Why? You were speeding. I was in the crosswalk." The verbal exchange continued for several seconds.

At that point, Rilatos's boyfriend, defendant Kenneth Wood, walked out of the tavern across the street, crossed the street, and walked down the sidewalk toward where Gulbranson was standing. Gulbranson turned to Wood and said, "What can I do for you?" Wood responded with words to the effect of "I'm just going home." Gulbranson then said, "How about you stay over there." Wood did not stop walking and, according to Gulbranson, put his hands up. Wood approached to within three or four feet of Gulbranson.

---

[1] Other witnesses testified that Gulbranson drove through the crosswalk and, when Rilatos started shouting, put the patrol car in reverse and stopped near her. Resolution of this disagreement is not necessary to answer the legal issues presented by the case.

Gulbranson decided at that point to arrest Wood for the crime of interfering with a police officer.[2] Gulbranson then pushed Wood in the chest, grabbed Wood by the neck, and commanded, "Get on the ground. Get on the ground. Do it now." Wood responded, "I didn't do nothing." Gulbranson repeated his command and Wood again responded, "I didn't do nothing." Wood then complied, lying face down on the ground with his arms under his body.

Gulbranson, who is six feet, three inches tall and weighs 260 pounds, then placed his knee and left arm on Wood's back to prevent him from getting up, while reaching for his handcuffs with his right hand. Gulbranson repeatedly shouted, "Get your hands behind your back" and "Do it now, do it now." Wood, who is five feet, ten inches tall and weighs between 160 and 180 pounds, did not immediately respond.

Meanwhile, Rilatos continued to shout epithets at Gulbranson, which, according to Gulbranson's later testimony, was distracting to him. In addition, defendant Jessica Oliphant, Rilatos's mother, came out of the apartment to see what was going on, and began shouting as well, telling the officer to "Knock it off" and that "He's not wanted or anything." When Wood did not immediately comply with Gulbranson's order to put his hands behind his back, Gulbranson decided that he "had to escalate." He grabbed his can of pepper spray, called "Cap-Stun," and sprayed Wood directly in the face from a distance of between six and 12 inches. (The Cap-Stun aerosol canister is designed to reach someone six to eight feet away.) Wood responded to the Cap-Stun spray by pulling his legs up and thrashing about, and Rilatos, still shouting at Gulbranson to get off Wood, advanced toward them. Gulbranson yelled at her to get away from him, threatened to spray her with the Cap-Stun as well, and in fact did spray a small burst in her direction.

Miller had arrived by then and had started to deal with Rilatos and Oliphant. Miller told Rilatos that she was under arrest, but Rilatos continued walking up the stairs to her apartment. Miller followed her. Oliphant then stepped

---

[2] Gulbranson testified that Rilatos, who by that time was on the stairs to the apartment, was in a position of advantage over him and, when he saw Wood cross the street, he then had to "figure out which was the bigger threat."

between them and pushed at Miller's chest, saying, "That's my daughter." Miller responded by shoving Oliphant onto a nearby bench and yelling at her to get away from him. Miller told Rilatos to place her hands behind her back and then attempted to grab her arm as she pulled away. Miller grabbed Rilatos's jacket instead and pulled on it, splitting the jacket down the back and pinching Rilatos's arm. Miller then was able to place Rilatos in handcuffs.

While Miller was dealing with Rilatos and Oliphant, Gulbranson began delivering "focused blows" to Wood's back and striking Wood eight times in the ribs, all the while shouting, "Let me see your hands, give me your hands." At the same time, Oliphant was approaching, shouting, "Please don't hit him," and "He's not wanted or anything," to which Gulbranson responded by telling her to go away or she would be going to jail as well.

By that time, Gulbranson saw that 10 or more people had come out of the tavern and onto the street and were watching the fracas. He managed to place a handcuff onto Wood's left wrist and looked up to see what Miller was doing. Wood then got to his feet and, as Gulbranson also struggled to his feet, Wood wrapped his arms around Gulbranson's waist. Gulbranson said, "Give me your goddam arm." Wood forced Gulbranson onto some nearby landscaping rocks, injuring Gulbranson's hip and causing Gulbranson to sprain his thumb. Wood was then behind Gulbranson, and, when Gulbranson looked down, he saw that Wood's hand was touching the front edge of Gulbranson's holster. Gulbranson began yelling, "Got a gun! Got a gun!" He and Miller, who, by that time, had forced Rilatos to walk down the stairs and sit down on the sidewalk, then ordered Wood to get down and give them his right arm (as noted, the left was already handcuffed) or "you're going to be hurt real bad here."

Miller ordered Wood to stop resisting and attempted to prevent Wood from standing again by getting behind him and pushing his legs aside.[3] As he did so, Wood drew his legs back and, with a sort of mule-kick, kicked Miller in the right

---

[3] Two bystanders testified that Miller kicked Wood while he was on the ground. One of them also testified that Gulbranson had his knee on Wood's back and was shoving his face into the rocks during this part of the incident.

hip with his foot. Miller then began delivering "focused blows" to Wood's right shoulder. When that proved to be ineffective, he struck Wood twice on the brachial nerve,[4] which enabled him to place Wood's right wrist in the handcuff. Miller then left Wood with Gulbranson and put Rilatos, who was continuing to scream and stomp toward the officers, in a patrol car.[5] He also placed Oliphant under arrest and put her in a different patrol car. Officers took Wood to the Toledo Police Department, where they searched him for weapons, and then took him to the hospital for treatment of his injuries.

Wood was charged with two counts of assaulting a public safety officer (one involving Gulbranson and one involving Miller), one count of interfering with a police officer, and one count of resisting arrest.[6] Rilatos was charged with one count of resisting arrest, one count of interfering with a police officer, and two counts of disorderly conduct. Oliphant was charged with one count of interfering with a police officer, one count of disorderly conduct, and one count of harassment.

Trial of the three defendants was consolidated; all raised the issue of self-defense. During the trial, defendants introduced expert testimony concerning the appropriate use of force by police officers in various situations. One of the experts testified that the standard to be applied was the "reasonable officer" standard, *i.e.*, what a reasonable officer would do in a similar situation. Defendants' experts testified that Gulbranson's actions, particularly with respect to Wood, were not reasonable, in light of the fact that—according to the facts as reported to them—Wood was not offering more than static resistance to Gulbranson's commands. The state also called an expert to testify about an officer's authority to use force in making an arrest. That expert testified that Gulbranson's actions with respect to Wood were reasonable,

---

[4] Miller testified that the brachial nerve runs from the neck to the shoulder, and a focused blow to that nerve is intended to weaken the arm sufficiently to permit the officer to gain control over an individual.

[5] Even in the patrol car, Rilatos continued to yell profanities and kick at the windows.

[6] Wood also was charged with one count of disorderly conduct, but the trial court dismissed that count before trial.

given that Wood presented an "ominous threat" to Gulbranson, insofar as Wood did not obey Gulbranson's request to "stay over there," he had his chin lowered as he walked, he appeared to quicken his pace as he approached Gulbranson, and Gulbranson knew that Wood had a "reputation" for "violent and resistive behavior." In addition, Gulbranson and Miller both testified at length about their thoughts during the course of the affray.

In his written request for instructions, Wood asked the court to give the following instructions pertaining to self-defense: Uniform Criminal Jury Instruction (UCrJI) 1107 ("Defense - Physical Force - Defense of Person"), UCrJI 1200 ("Definition of 'Resists' "),[7] and UCrJI 1227 ("Self-Defense - Resisting Arrest").[8] Rilatos and Oliphant did not include requests for self-defense instructions in their written requests. At the conclusion of the trial, all the defendants requested Special Instruction 101, which was based on wording taken from one of this court's earlier cases dealing with a defendant's right to use force to defend himself during an arrest, *State v. Wright*, 310 Or 430, 799 P2d 642 (1990). That proposed instruction provided:

> "If a peace officer uses excessive force in making an arrest, the arrestee may use only such physical force as is reasonably necessary under the circumstances to defend himself or herself against the excessive force being used against him or her."

The trial court declined to give that instruction, stating that,

> "as I explained in chambers,[9] * * * although the word 'excessive' is one that is apt in terms of a description of a person's conduct, legally, I think the standard is that—set forth in the statute and that's the standard by which a police officer's conduct needs to be judged. If the jury finds that the police officer reasonably believed it was necessary to use whatever level of force he did and the jury believes that, then the force used is legal.

---

[7] The state also had requested the court to instruct the jury concerning the definition of the word "resists" as provided in UCrJI 1200.

[8] We discuss and set these instructions out in the text later in this opinion.

[9] There is no record of what, specifically, the court discussed with the parties in chambers.

"The statute also sets forth limitations on the use of deadly physical force, and it's that that's the standard. And if the jury finds that the conduct fit within those permissible uses, then it's lawful; if they don't, it's not lawful.

"And I don't want to substitute the word 'excessive' as some kind of undefined, nebulous standard that is different than what the statute sets forth, that it would become a subjective reading in a part of a juror's mind of what do they think is excessive."

All three defendants took exception to the court's refusal to give that instruction.

The court also explained that it had decided to instruct the jury about an officer's right to use force by using instructions based on ORS 161.235 and ORS 161.239, which describe justification defenses for police officers who have been charged with crimes arising out of their conduct.[10] ORS 161.235 provides:

"Except as provided in ORS 161.239, a peace officer is justified in using physical force upon another person only when and to the extent that the peace officer reasonably believes it necessary:

"(1)   To make an arrest or to prevent the escape from custody of an arrested person unless the peace officer knows that the arrest is unlawful; or

"(2)   For self-defense or to defend a third person from what the peace officer reasonably believes to be the use or imminent use of physical force while making or attempting to make an arrest or while preventing or attempting to prevent an escape."

ORS 161.239 provides:

"(1)   Notwithstanding the provisions of ORS 161.235, a peace officer may use deadly physical force only when the peace officer reasonably believes that:

"(a)   The crime committed by the person was a felony or an attempt to commit a felony involving the use or threatened imminent use of physical force against a person; or

---

[10] Another statute, ORS 133.235(4), provides, "In order to make an arrest, a peace officer may use physical force as justifiable under ORS 161.235, 161.239 and 161.245."

"(b)  The crime committed by the person was kidnapping, arson, escape in the first degree, burglary in the first degree or any attempt to commit such a crime; or

"(c)  Regardless of the particular offense which is the subject of the arrest or attempted escape, the use of deadly physical force is necessary to defend the peace officer or another person from the use or threatened imminent use of deadly physical force; or

"(d)  The crime committed by the person was a felony or an attempt to commit a felony and under the totality of the circumstances existing at the time and place, the use of such force is necessary; or

"(e)  The officer's life or personal safety is endangered in the particular circumstances involved.

"(2)  Nothing in subsection (1) of this section constitutes justification for reckless or criminally negligent conduct by a peace officer amounting to an offense against or with respect to innocent persons whom the peace officer is not seeking to arrest or retain in custody."

All three defendants objected to the court's proposed course of action, pointing out that the officers were not on trial—the defendants were—and the primary consideration relevant to the question of the defendants' right to use force in self-defense was the defendants' reasonable belief in the necessity of using force, not the officers' belief. All three defendants argued that instructing the jury on an officer's justification defense would confuse the jury and wrongly suggest that, if an officer's use of force was lawful, then a defendant would not have the right to defend himself. The court responded that, as long as the officer reasonably believed that it was necessary to use the force that he used, then the force used was legal and, by definition, not excessive. The court therefore rejected defendants' arguments.

The trial court instructed the jury as follows. With respect to Wood, the court first reviewed the two charges of assaulting a public safety officer, explaining the elements of the first of those offenses, and then giving the uniform instruction on self-defense:

"With regard to the charge of Assaulting a Public Safety Officer, the defense of self-defense has been raised by

Kenneth Wood. A person is justified in using physical force on another person to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force. In defending, a person may only use the degree of force which he reasonably believes to be necessary. The burden of proof is on the State to prove beyond a reasonable doubt that the defense does not apply."

The court told the jury that the same elements, definitions, and the defense of self-defense also applied to the second charge of assaulting a public safety officer.

After instructing the jury on the charge of interfering with a police officer, the court turned to the charges of resisting arrest, which had been filed against Wood and Rilatos. The court instructed the jury as follows:

"Oregon law provides that a person commits the crime of Resisting Arrest if the person intentionally resists a person known by him or her to be a peace officer in making an arrest.

"In this case, to establish the crime, the State must prove beyond a reasonable doubt the three elements—Lincoln County, Oregon, the date, and that the person intentionally resisted a person known by him or her to be a peace officer in making an arrest. Again, here the culpable mental state alleged is intentionally, and it has the same definition as I previously gave to you.

"With regard to the charge of Resisting Arrest, if the defendant knew that the person making the arrest was a peace officer, whether the arrest was a lawful or an unlawful arrest is not a defense to the charge of Resisting Arrest.

"A peace officer is justified in using physical force on a person being arrested when, and to the extent, that he reasonably believes it necessary to make an arrest and/or—excuse me, or to prevent the escape from custody of an arrested person, unless he knows that the arrest is not lawful.

"The use of deadly physical force by a peace officer is justified only in the following circumstances—and there are five—when the crime committed by the person being arrested was a felony or an attempted felony that involved the use or threatened imminent use of physical force

against a person; or when the crime committed by the person being arrested was Kidnapping, Arson, First Degree Escape, First Degree Burglary, or any attempt to commit one of these offenses; or when, regardless of the offense, it is necessary to defend the officer or another person from what he reasonably believed to be the use or threatened use of deadly physical force; four, when the crime committed by the other person under arrest was a felony or an attempted felony and, under the totality of the circumstances existing at the time and place, the use of deadly physical force is necessary; and fifth, the officer's life or personal safety was endangered [in] the particular circumstances involved. So those are the five limits regarding the use of deadly physical force by a police officer.

"What is deadly physical force? Deadly physical force means physical force that, under the circumstances in which it is used, is readily capable of causing death or serious physical injury.

"What is serious physical injury? Serious physical injury means a physical injury—which I previously defined to you—that creates a substantial risk of death, or causes serious or protracted disfigurement, or causes protracted impairment of health, or causes protracted loss or impairment of the function of any bodily organ.

"Finally, with regard to the charge of Resisting Arrest, the [defense of] self-defense has been raised. *A peace officer may use physical force on a person being arrested only when, and to the extent that the officer reasonably believes it necessary to make an arrest.*

"If a person being arrested [physically] opposes an arresting officer, the officer may use reasonable force to overcome the opposition. If, however, the officer uses unreasonable physical force to arrest a person who is offering no unlawful resistance—as I have defined that term for you— that person may use physical force for self-defense from what the person reasonably believes to be the use or imminent use of unlawful physical force by the officer. In defending, the person may only use that degree of force which he reasonably believes to be necessary. The burden of proof is on the State to prove beyond a reasonable doubt that this defense does not apply."

(Emphasis added.) Notwithstanding the court's suggestion in the foregoing that it had defined the phrase "unlawful resistance" for the jury, the trial court offered no such definition or instruction. Moreover, the trial court did not give the jury the uniform jury instruction defining the term "resist," UCrJI 1200, which both the state and Wood had requested, and which would have illuminated the concept of "unlawful resistance." That uniform instruction is based on ORS 162.315(2)(c),[11] and provides:

> "Resists—use or threatened use of violence, physical force, or any other means that create a substantial risk of physical injury to any person and includes, but is not limited to behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to an officer. Passive resistance does not constitute behavior intended to prevent being taken into custody."

The trial court did not give a self-defense instruction with respect to any other offense charged against Rilatos or any of the charges against Oliphant.

Ultimately, the jury convicted Wood and Rilatos of all the charged offenses. It convicted Oliphant on the charge of interfering with a police officer but acquitted her of the charges of disorderly conduct and harassment. Defendants filed a combined appeal from their convictions to the Court of Appeals, assigning error to the trial court's failure to give their requested special instruction based on *Wright* and to the trial court's decision to instruct the jury on the police officers' justification defense. As noted, the Court of Appeals affirmed without opinion. In this court, the three defendants jointly reprise the arguments that they made to the Court of Appeals.

---

[11] ORS 162.315(2)(c) provides:

" 'Resists' means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to an officer. Passive resistance does not constitute behavior intended to prevent being taken into custody."

██ As a preliminary matter, we observe that Rilatos and Oliphant argue, in a vague and general way, that they were entitled to self-defense instructions with respect to all the charges against them, but that only Rilatos received a self-defense instruction, and then only with respect to the charge of resisting arrest. We easily dispose of those arguments. Neither Rilatos nor Oliphant requested a self-defense instruction in their written requests for instructions, and neither objected to the trial court's failure to give the instruction with respect to the charges of interfering with a police officer or disorderly conduct. In addition, as noted, Oliphant was acquitted of the disorderly conduct and harassment charges.

Furthermore, neither Rilatos nor Oliphant were entitled to self-defense instructions with respect to the charges of interfering with a police officer or disorderly conduct. A person's right to self-defense is set out in ORS 161.209, which provides:

> "Except [in circumstances not present here], a person is justified in using physical force upon another person for self-defense or to defend a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose."

As is evident from the plain wording of that statute, the self-defense justification applies only when the defendant uses physical force against a person in response to the other person's use or imminent use of force. Oliphant's conviction for interfering with a police officer was based on evidence that she stepped between Miller and Rilatos as Miller was attempting to arrest Rilatos, and then pushed on his chest to prevent him from following Rilatos. To that point, Miller had not used force on anyone, nor had he threatened to use force. Therefore, the evidence did not support a self-defense instruction for Oliphant and the trial court did not err. *See State v. Shumway*, 291 Or 153, 155, 630 P2d 796 (1981) (any error in trial court's self-defense instruction was harmless because issue of self-defense was not presented by the evidence); *State v. Fuller*, 203 Or 608, 611, 280 P2d 980 (1955) (trial court correctly refused to give self-defense instruction

where no evidence introduced or offered by defendant would have raised issue of self-defense).

Similarly, Rilatos's conviction for interfering with a police officer was based on evidence that she repeatedly advanced toward the officers as they tried to arrest Wood. Her disorderly conduct convictions were based on evidence that she yelled profanities at both officers during the entire incident and that she kicked the windows of the patrol car once she had been placed inside it. Those actions on Rilatos's part involved no use of force against another person. Again, the evidence did not support self-defense instructions for Rilatos on those charges and the trial court did not err in failing to give them.

■ We turn to what we view as the fundamental issue[12] presented in this case: Under what circumstances does a person have a right to use force in self-defense when he or she is being placed under arrest? Wood[13] contends that a defendant may use force to defend himself against what he reasonably believes to be an officer's unlawful use of force against him, whether the officer's use of force actually was unlawful or not. Because the focus is on the defendant's reasonable belief, Wood argues, the trial court erred in instructing the jury to determine whether the officers' use of force was lawful, and to do so by focusing, *inter alia*, on the *officers'* belief in the reasonableness of their actions. The state, by contrast, argues that, "if an officer uses only lawful force to effect an arrest, the arrestee may not respond with force, *whether or not* he reasonably thinks he is defending himself against unlawful force." (Emphasis in original.) Those contrasting views aptly frame the issue.

■ We begin with first principles: Justification, including the justification of self-defense, is a defense. ORS 161.190. That means that, once self-defense has been raised by a defendant, the state has the burden of disproving it

---

[12] In their combined brief to this court, defendants in general, and Wood in particular, do not make any argument specifically addressing the self-defense instruction that the trial court gave respecting the charges against Wood for assaulting a police officer. We therefore confine our discussion to the issue of a person's right to self-defense in the context of a charge of resisting arrest.

[13] Although all three defendants jointly sought review in this court, for convenience and clarity, we refer in this part of the opinion to Wood because he is the defendant whose case most clearly raises the issue presented.

beyond a reasonable doubt. ORS 161.055. As noted, a person's right to self-defense is governed by ORS 161.209, which provides that a person may use physical force to defend himself "from what *the person* reasonably believes to be the use or imminent use of unlawful physical force." (Emphasis added.) The plain wording of the statute thus establishes that, in general, a person's right to use force in self-defense depends on the person's *own* reasonable belief in the necessity for such action, and not on whether the force used or about to be used on him actually was unlawful. That interpretation is borne out by this court's case law. *See, e.g., State v. Holbrook*, 98 Or 43, 70, 188 P 947 (1920) ("The law [respecting the right to use force in self-defense] is that the matter must be considered from the standpoint of a reasonable man in the plight of the defendants at the time, under all the conditions surrounding them, as disclosed by the testimony."); *State v. Jones*, 179 Or 636, 639, 173 P2d 960 (1946) (same). It also is supported by legislative history. The Commentary to the Proposed Oregon Criminal Code, Final Draft and Report, sections 22 to 24 (July 1970) (adopting ORS 161.209), quotes with approval the following statement by this court in *State v. Rader*, 94 Or 432, 456, 186 P 79 (1919):

> "It is not the intent of the assailant which harms the one he attacks, neither is the latter bound by it nor required to ascertain it. * * * It is the imminent danger, real or apparent, of great bodily injury to himself which justifies a defendant in protecting himself."

Commentary to sections 22 to 24.

The cases and the Commentary specifically deal with a person's right to use force in self-defense against another private citizen. That begs the question whether a different rule applies when a person reasonably believes it necessary to use force against a police officer who is making an arrest. Nothing in the wording of ORS 161.209 suggests that the rule is altered in such a circumstance. The text of that statute contains two exceptions, neither of which is pertinent here.[14] Moreover, in at least one case, this court has suggested that a defendant would have a right to assert self-defense if there had been

---

[14] ORS 161.209 states that it applies "[e]xcept as provided in ORS 161.215 and 161.219." ORS 161.215 provides:

"an overt act of a hostile character on the part of [a police officer] or any demonstration on the part of said officer that would have induced the defendant as a reasonably prudent man to believe that he was in imminent danger likely to cause death or great bodily injury."

*State v. Weber*, 246 Or 312, 318, 423 P2d 767 (1967).

At the same time, however, the law is clear that a person may not use physical force to resist arrest, even if the arrest is unlawful:

"A person may not use physical force to resist an arrest by a peace officer who is known or reasonably appears to be a peace officer, whether the arrest is lawful or unlawful."

ORS 161.260; *see also* ORS 162.315 (a person may not resist arrest by intentionally using or threatening to use violence, physical force, or any other means that creates a substantial risk of physical injury to any person against a person known to be a peace officer making an arrest).[15]

---

"Notwithstanding ORS 161.209, a person is not justified in using physical force upon another person if:

"(1) With intent to cause physical injury or death to another person, the person provokes the use of unlawful physical force by that person; or

"(2) The person is the initial aggressor, except that the use of physical force upon another person under such circumstances is justifiable if the person withdraws from the encounter and effectively communicates to the other person the intent to do so, but the latter nevertheless continues or threatens to continue the use of unlawful physical force; or

"(3) The physical force involved is the product of a combat by agreement not specifically authorized by law."

ORS 161.219 provides:

"Notwithstanding the provisions of ORS 161.209, a person is not justified in using deadly physical force upon another person unless the person reasonably believes that the other person is:

"(1) Committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person; or

"(2) Committing or attempting to commit a burglary in a dwelling; or

"(3) Using or about to use unlawful deadly physical force against a person."

[15] Before the enactment of ORS 161.260, Oregon law gave a person the right to use force to resist an "unlawful" arrest. The Commentary to the Proposed Oregon Criminal Code, Final Draft and Report, section 32 (July 1970) (adopting ORS 161.260), makes clear that the primary concern of the drafters was to discourage people from engaging arresting officers in combat because of differences of opinion concerning the validity of an arrest.

■      This case, then, presents an apparent conundrum: A person may not use force to resist arrest, even if the arrest is unlawful, but any person is entitled to use such force as is necessary to overcome what the person reasonably believes to be the unlawful use of physical force by anyone, including a police officer. How can a person obey the statutes prohibiting the use of force to resist arrest and still exercise his right under ORS 161.209 to use force in self-defense? To answer that question, as this court stated in *Wright*,

> "it is crucial to distinguish between (1) the use of physical force in resisting arrest and (2) the use of physical force in defending oneself, *i.e.*, self-defense, against excessive use of force by the arresting officer. The former is unlawful. Depending on the circumstances, the latter may be justifiable and not criminal.
>
> "\* \* \* \* \*
>
> "If a peace officer uses excessive force in making an arrest, the arrestee has a right to use physical force in self-defense against the excessive force being used by the officer. \* \* \* In that circumstance, the arrestee is not 'resisting arrest,' but, rather, is defending against the excessive force being used by the arresting officer."

310 Or at 434-35.

In *Wright*, the court noted that the state had conceded that the defendant had presented evidence at trial that the arresting officers had used excessive force, by which the court meant unlawful force under ORS 161.235, which provides that an officer is justified in using physical force only when and to the extent that the officer reasonably believes it is necessary to make an arrest, prevent an escape from custody, or for self-defense or defense of a third party. *Id.* at 435. For that reason, the court observed, the defendant in *Wright* was entitled to defend himself against that excessive use of force. *Id.* Because of the state's concession, however, the court in *Wright* was not required to confront the issue that is presented here—whether the actual lawfulness (under ORS 161.235 and ORS 161.239) of the officer's use of force is relevant to the jury's consideration of the defendant's self-defense claim. Here, of course, the state did not concede that the evidence could be found to show that the officers used

excessive or, to be more precise, unlawful force in arresting Wood, and the issue is squarely presented.

We think that the answer to that question follows directly from the wording of ORS 161.209, which makes the *defendant's reasonable belief* that unlawful force was being used (or about to be used) against him paramount. Thus, while actual lawfulness of Gulbranson's and Miller's conduct might in some way be deemed pertinent to assessing those officers' own culpability in some other forum, such as in one hearing criminal charges or a civil action against them, that subject is not a consideration respecting Wood's right of self-defense. Wood had a right to have the jury consider the circumstances surrounding the event from his own point of view. If Wood believed, and a reasonable person in his position would have believed, that the use or imminent use of force against him exceeded the force reasonably necessary to effect the arrest, then he was entitled to defend himself from that use of force. Moreover, as we have already noted, the burden of proof was on the state to disprove the existence of that defense beyond a reasonable doubt.

In this case, however, the court, in instructing the jury on the charge of resisting arrest, gave the jury instructions based on ORS 161.235 and ORS 161.239, which describe *an officer's* right to use force, including deadly force, in effectuating an arrest or preventing an escape. Those statutes, and the instructions that the court gave the jury based on them, provide that an officer is justified in using the degree of physical force in those circumstances that the officer reasonably believes is necessary. Those instructions thus inserted an irrelevant issue—the arresting officers' actual state of mind—into the jury's deliberations concerning Wood's claim of self-defense. The trial court erred in so instructing the jury with respect to Wood's claim. Instead, Wood was entitled to have his right to self-defense explained to the jury in terms of what a reasonable person in his position would have believed was occurring. What the officers believed was not (indeed, could not have been) any part of Wood's state of mind.[16]

---

[16] We describe what the jury should have been told because the trial court's error in instructing the jury as it did requires a new trial, and that trial must focus

■ In Wood's case, that error was not harmless. To "resist" arrest, a person must use or threaten to use "violence, physical force or any other means that creates a substantial risk of physical injury to any person," including "behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer." ORS 162.315(2)(c). Evidence was presented at trial (including through Gulbranson's own testimony) from which the jury could have found that Wood did not "resist" under that definition of the term until after Gulbranson sprayed him in the face with Cap-Stun pepper spray and began delivering "focused blows" to his back. In that case, whatever the officer's perception for the necessity (and, therefore, the actual lawfulness) of using such force, the jury could have found that a reasonable person in Wood's position would have believed that the officer was using unlawful force against him.

In addition, because we conclude that there was evidence from which a jury could have found that Wood did not resist arrest, we think that Wood's convictions for assaulting a public safety officer also must be reversed. That is so because Wood's convictions for assaulting a public safety officer were based on evidence that he injured the officers in the course of engaging in what he claimed was the justifiable use of force to defend himself. If a jury finds that that use of force was justified, then it would also be appropriate for the jury to reconsider the evidence supporting the charges of assaulting a public safety officer.

■ As discussed above, Rilatos also was charged with resisting arrest, and the trial court instructed the jury with respect to her self-defense claim at the same time and in the same way that it did for Wood. Rilatos's conviction for resisting arrest was based on evidence that she pulled her arms away from Miller to avoid being handcuffed and taken into custody. Before Rilatos pulled her arms away from Miller, Miller had not used any physical force on Rilatos, nor had he threatened to use force beyond that necessarily involved in taking her into custody by handcuffing her. Rilatos did not

_____

on Wood's state of mind, the only state of mind relevant to his defense of self-defense.

respond to that action on Miller's part with any other use of force. In those circumstances, the evidence did not support a self-defense instruction for Rilatos on the resisting arrest charge against her and, therefore, any error in the instruction that the trial court gave the jury with respect to Rilatos's self-defense claim was harmless.

Finally, because the issue may arise on retrial, we turn to consider whether the trial court erred in refusing to give the special instruction that defendants requested. That proposed instruction provided:

> "If a peace officer uses excessive force in making an arrest, the arrestee may use only such physical force as is reasonably necessary under the circumstances to defend himself or herself against the excessive force being used against him or her."

That instruction was based on the following statement by this court in *Wright*:

> "We conclude that, if an officer making an arrest uses excessive force, the permissible use of physical force by the arrestee is limited to the use of such force as is reasonably necessary under the circumstances for self-defense against the excessive force being used by the arresting officer."

*Wright*, 310 Or at 436.

Defendants cannot be faulted for believing that *Wright* was pertinent. However, as discussed above, the state in *Wright* had conceded that evidence was presented at trial that the officers had used "excessive force" in arresting the defendant. Moreover, as noted above, context shows that, by the phrase "excessive force," the court in *Wright* was referring to force that was unlawful under ORS 161.235, which focuses on the *officer's* state of mind. *See Wright*, 310 Or at 434-35 (illustrating proposition). The only issue addressed in the case was whether a defendant who had been subjected to unlawful force by a police officer during an arrest was entitled to a self-defense instruction that did not state that an arrestee's right to use physical force in self-defense must be reasonable under the circumstances. The court held that the

defendant was not entitled to such an instruction because it was not a correct statement of the law. *Id.* at 437.

Because the existence of evidence of the unlawfulness of the officers' use of force was a given in *Wright*, we do not think that the instruction that defendants culled from this court's statements in that case is appropriate.[17] We also agree with the trial court that the proposed instruction requires the jury to decide whether a police officer's use of force was "excessive," a term that is not found in the statutes governing either self-defense or resisting arrest. As we have discussed in detail above, ORS 161.209 provides that a person is entitled to use force in self-defense against what the person reasonably believes to be the use or imminent use of "unlawful" physical force. Asking the jury also to consider whether an officer's use of force was "excessive" is not helpful or correct, particularly when this court, in *Wright*, itself appeared to view the word "excessive" as synonymous with "unlawful."[18] The trial court did not err separately in refusing to give defendants' special instruction based on *Wright*. The trial court will be required on remand, however, to give some instruction that conforms to our analysis as to whose state of mind is the proper focus of the self-defense claim.

Finally, we address one further matter that is likely to arise on remand. Defendant Wood requested, and the trial court gave UCrJI 1227, the uniform jury instruction on "Self-Defense—Resisting Arrest," which begins as follows:

"The defense of self-defense has been raised.

"A peace officer may use physical force on a person being arrested only when and to the extent that the officer reasonably believes it necessary to make an arrest. * * *."

---

[17] Formulating a jury instruction from this court's analytical observations in any kind of case can be difficult. This court's statements of the law often are both fact- and case-specific. We do not deny that such an effort sometimes must be made, but we note that any such enterprise requires caution.

[18] Indeed, a difficulty with *Wright* lies in its reliance on statutes—some of which may have been irrelevant to the specific task before the court—to announce principles governing a defendant's right to defend himself.

As our previous discussion shows, that statement impermissibly shifts the focus of the jury's deliberations on a defendant's self-defense claim from what the defendant reasonably believes to what the officer believes. That is incorrect and should not be included in the instructions to the jury during the trial on remand.[19]

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is reversed with respect to defendant Wood's convictions for resisting arrest and assaulting a public safety officer. In all other respects, the judgments of the circuit court are affirmed. Defendant Wood's case is remanded to the circuit court for further proceedings.

---

[19] In addition, as we observed above, notwithstanding the fact that the Comment to UCrJI 1227 ("Self-Defense—Resisting Arrest") requires, and both defendant and the state requested the court to give, an instruction defining the term "resists," the trial court neglected to do so. That failure—which certainly was inadvertent—made it impossible for the jury properly to evaluate whether Wood's conduct constituted the crime of resisting arrest. Neither the state nor any of the defendants called that failure to give complete instructions to the court's attention, however, and we mention it only to assist in assuring that the jury in any retrial is fully instructed.