Submitted on remand from the Oregon Supreme Court December 10, 2014, reversed and remanded August 26, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

IAN GEORGE VANORNUM,
*Defendant-Appellant.*

Lane County Circuit Court
200818082A; A142341

356 P3d 1161

Peter Gartlan, Chief Defender, and Neil F. Byl, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and DeVore, Judge.

ORTEGA, P. J.

**ORTEGA, P. J.**

This case, an appeal of defendant's conviction for resisting arrest, ORS 162.315, is before us on remand from the Oregon Supreme Court. In our previous decision, we determined that neither of defendant's claims of instructional error was preserved for our review under ORCP 59 H, and that we therefore were barred from exercising review. *State v. Vanornum*, 250 Or App 693, 699, 282 P3d 908 (2012), *rev'd and rem'd*, 354 Or 614, 317 P3d 889 (2013). The Supreme Court reversed and remanded our decision, concluding that ORCP 59 H does not apply to or control "appellate court review of claims of instructional error, including claims of 'plain error.'" *State v. Vanornum*, 354 Or 614, 616, 317 P3d 889 (2013). The court then concluded that the trial court's use of the Uniform Criminal Jury Instruction (UCrJI) 1227 (describing when a person is allowed to use physical force for self-defense in response to an officer's use of unreasonable force when making an arrest) was plain error, and remanded for us to determine if we would exercise our discretion to review the error. 354 Or at 631. We conclude that the gravity of the error and the ends of justice require us to exercise our discretion to correct the error and, accordingly, reverse and remand for a new trial.[1]

"When discussing [a] defendant['s] requested instructions, we view the facts in the light most favorable to [the] defendant[]." *State v. Oliphant*, 347 Or 175, 178, 218 P3d 1281 (2009). So viewed, the facts are as follows.

As an 18-year-old college student, defendant helped plan and participated in an anti-pesticide protest in Eugene. He was among several people who presented speeches at a peaceful demonstration. After the speeches ended, several participants, including defendant, dressed in "hazmat suits," white painter's jumpers, and carried plastic garden sprayers, each painted with a skull and crossbones. Defendant sprayed water from the container into planters at the corner of a nearby intersection and on the ground near passing cars,

---

[1] Our decision regarding defendant's first assignment of error obviates the need to address his second assignment of error, challenging the trial court's denial of his request for a special jury instruction defining "unreasonable physical force."

calling out, "Who wants pesticides?" Defendant walked in a loop around the four corners of the intersection with the sprayer, blocking traffic to some extent in the process.

As the demonstration was winding down, Keedy, a federal Homeland Security officer, arrived at the demonstration, concerned because one of the other speakers had previously threatened acts of civil disobedience at federal buildings. Keedy called Solesbee of the Eugene Police Department to let him know that he was at the rally and that the rally was peaceful. Keedy described a couple of people dressed up in "exterminator costumes" who were spraying something around planters, but stated that it seemed innocuous and that he could not see "anything wrong" with what they were doing. At 1:11 p.m., Keedy called Solesbee a second time to inform him that Keedy was leaving, that everything was still peaceful, but that there was a potential public safety issue with defendant spraying on the ground around passing cars while they were stopped at the intersection. Solesbee told Keedy that he was sending a bike officer to the scene. Solesbee also decided to go to the rally to assist the bike officer.

Solesbee drove to the scene in an unmarked car and arrived as defendant was walking through the crosswalk. Solesbee called him over to speak with him, and told defendant that if he did not stay out of the street he would arrest him. Defendant and Solesbee talked for about 30 seconds. At one point, defendant pointed his sprayer at Solesbee and said something like, "Would you want to be sprayed in the face with poison?" However, Solesbee did not think that the container actually contained poison.

Solesbee again warned defendant to stay out of the street and drove off. He then decided to arrest defendant for disorderly conduct. He parked on the sidewalk, approached defendant from behind, and put defendant in a painful "arm bar" and "escorted [him] forcibly" across the street. Two bike officers arrived at the same time and assisted Solesbee, with one officer grabbing defendant's other arm. Defendant pulled away from the officers, and they "were able to get him across the street" by "forcing him and pushing him and holding his arm." Solesbee then told defendant that he was under arrest

for disorderly conduct, pushed him against a pillar, and put handcuffs on one of his wrists. The officers gave defendant conflicting orders, one telling him to get on the ground and the other telling him not to move. Solesbee pulled defendant by the hair and pushed him into the ground "with all [of his] body weight," hitting defendant's head on the pavement in the process. He then held defendant down on the ground and tried to cuff his other hand. Solesbee testified that defendant continued to resist. At 1:16 p.m., five minutes after Keedy's call to Solesbee, a second officer tased defendant in the back for five seconds. Twelve seconds after the first tasing, the officer tased defendant again for another five seconds. Both tasings took place while defendant lay prone on his stomach, and the second may have occurred after defendant was fully handcuffed. Defendant sustained a closed head injury consistent with a mild concussion, as well as taser wounds, a forehead abrasion, and a back contusion or strain.

Defendant was tried for disorderly conduct and resisting arrest. After presentation of the evidence, defendant acquiesced to the giving of the following uniform instruction regarding self-defense in the context of a prosecution for resisting arrest:

"And a peace office[r] may use physical force on a person being arrested only when and to the extent *the officer reasonably believes* it is necessary to make an arrest. If a person being arrested physically opposes an arresting officer, the officer may use reasonable force to overcome the opposition.

"If, however, the officer uses unreasonable physical force to arrest a person who is offering * * * no unlawful resistance, as I have defined that term for you, that person may use physical force for self-defense from what *the person reasonably believes* to be the use or imminent use of unlawful physical force by the officer.

"In defending[,] the person may only use that * * * degree of force which *he reasonably believes* to be necessary."[2]

UCrJI 1227 (emphases added).

---

[2] UCrJI 1227 has since been revised consistently with the Supreme Court's decision in *State v. Oliphant*, 347 Or 175, 218 P3d 1281 (2009). Throughout this opinion, when we refer to UCrJI 1227, we mean the above-quoted version.

Defense counsel requested an additional instruction to address the ambiguity in the uniform instruction—that is, the italicized words in the first paragraph focus on the officer's perception of the need for physical force, while the italicized words in the second and third paragraph focus on the defendant's perception of his own need to use defense force. That proposed instruction read as follows:

"When analyzing a claim of self-defense to the charge of resisting arrest, the jury shall find that 'unreasonable physical force' by the officers making the arrest exists if the defendant reasonably believed that the officers' use of force was disproportionate in the circumstances.

"If the jury finds that the defendant reasonably believed that the officers' use of force was disproportionate in the circumstances, the jury must then decide whether the defendant reasonably believed that his own use of force in response was necessary in the circumstances."

After hearing arguments on the special instruction, the court refused to give the instruction. Defendant properly excepted to the court's refusal immediately after the jury was instructed, as required by ORCP 59 H. He did not except to the instruction that the court gave based on UCrJI 1227. Defendant was subsequently convicted of resisting arrest.

We address defendant's first claim of instructional error. Defendant argues that the trial court committed plain error by giving UCrJI 1227, which the Supreme Court concluded was an incorrect statement of law in *State v. Oliphant*, 347 Or 175, 197-98, 218 P3d 1281 (2009). As stated above, UCrJI 1227 provides, in part, "A peace officer may use physical force on a person being arrested only when and to the extent that the *officer reasonably believes* it necessary to make an arrest." (Emphasis added.) In *Oliphant*, the court concluded that that was an incorrect statement of the law because it "impermissibly shifts the focus of the jury's deliberations on a defendant's self-defense claim from what the defendant reasonably believes to what the officer believes." 347 Or at 198. After concluding that appellate review was proper, the Supreme Court concluded that the claimed error qualified as "plain" because it was "an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among

competing inferences." *Vanornum*, 354 Or at 629 (citing *State v. Ramirez*, 343 Or 505, 511-12, 173 P3d 817 (2007), *amended on recon*, 344 Or 195, 179 P3d 673 (2008) (stating the requirements for plain error review); *Ailes v. Portland Meadows*, 312 Or 376, 381-82, 823 P2d 956 (1991) (same)). The court remanded the case to us to determine the second part of plain error inquiry—whether to exercise our discretion to consider defendant's claim of plain error. *Vanornum*, 354 Or at 630-31.

Even if an error meets the test for plain error,

> "the appellate court must exercise its discretion to consider or not to consider the error, and if the court chooses to consider the error, the court must articulate its reasons for doing so. This is not a requirement of mere form. A court's decision to recognize unpreserved or unraised error in this manner should be made with utmost caution."

*Ailes*, 312 Or at 382. "That discretion entails making a prudential call that takes into account an array of considerations, such as the competing interests of the parties, the nature of the case, the gravity of the error, and the ends of justice in the particular case." *Vanornum*, 354 Or at 630 (citing *Ailes*, 312 Or at 382 n 6).

The gravity of the error and the ends of justice require that we exercise our discretion to correct the instructional error in this case. In analyzing the gravity of an error, we consider if the issue was critical to the outcome of the case. *See State v. Lovern*, 234 Or App 502, 513, 228 P3d 688 (2010) (determining that the gravity of the error was substantial when "[t]he issue of the complainant's credibility was critical to the outcome of this case"). Here,

> "[t]he entire trial focused on the interaction between defendant and police officers, and the extent to which the officers used excessive force. It was clear from the testimony that defendant regarded the officers' use of force as disproportionate and unreasonable, while the officers did not. * * * Had the jury focused on defendant's state of mind and not the police officers', the verdict might well have been different."

*Vanornum*, 250 Or App at 707 (Schuman, J., dissenting). The Supreme Court elsewhere concluded that an erroneous

jury instruction that affected the outcome of the case was a grave error. *See, e.g., Wallach v. Allstate Ins. Co.,* 344 Or 314, 325, 180 P3d 19 (2008) (when a jury applies an inaccurate legal rule to the facts, thus permitting the jury to reach an erroneous result, "the instructional error substantially affected the [party's] rights and require[s] reversal").

Correction serves the ends of justice because preservation would not have made a difference in this case. *See State v. Jury,* 185 Or App 132, 139-40, 57 P3d 970 (2002) (concluding that correction served the ends of justice when preservation would not have made a difference in the case). On more than one occasion, the trial judge announced that although the parties were free to submit alternative jury instructions, he was "pretty unlikely" to use them because he could not "go wrong with the uniform instructions."[3] Defendant's failure to object to UCrJI 1227 thus does not "subvert the comity considerations that underlie the preservation requirement." 185 Or App at 140. Additionally, correction of the error serves the ends of justice by ensuring that defendant has the opportunity to have a trial with a jury that has been correctly instructed on the law.

Accordingly, we exercise our discretion to correct the plain error.

Reversed and remanded.

---

[3] The trial judge told the parties that in 16 years of presiding over criminal cases, he had "probably given [no] more than one or two special instructions that somebody's gemmed up [*sic*] from some argumentative language in a Court of Appeals decision."