614 December 27, 2013 No. 65

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

IAN GEORGE VANORNUM,
*Petitioner on Review.*

(CC 200818082A; CA A142341; SC S060715)

En Banc

On review from the Court of Appeals.*

Argued and submitted June 4, 2013.

Neil F. Byl, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for petitioner on review. With him on the brief was Peter Gartlan, Chief Defender.

Patrick M. Ebbett, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Mary H. Williams, Deputy Attorney General, and Anna M. Joyce, Solicitor General.

Bridget Donegan, Larkins Vacura LLP, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

LINDER, J.

The decision of the Court of Appeals is reversed, and the case is remanded to that court for further proceedings.

Landau, J., concurred and filed an opinion in which Brewer, J., joined.

_____
*Appeal from Lane County Circuit Court, Jack A. Billings, Judge. 250 Or App 693, 282 P3d 908 (2012).

**LINDER, J.**

Defendant appealed his conviction for resisting arrest, ORS 162.315, raising, among other issues, two claims that the trial court erred in instructing the jury. The Court of Appeals concluded that it was barred from reviewing those claims by ORCP 59 H, which states that "a party may not obtain review on appeal" of an asserted error in giving or failing to give an instruction unless the party objected in a specified manner. We allowed defendant's petition for review to consider whether ORCP 59 H applies to and controls appellate court review of claims of instructional error, including claims of "plain error." We hold that it does not. We reverse and remand to the Court of Appeals for further proceedings.

The relevant facts are primarily procedural. Police arrested defendant for disorderly conduct during an anti-pesticide demonstration. In the course of the arrest, defendant struggled and failed to follow police officers' instructions while they forcefully moved him across a street in an "arm bar" hold, pushed him against a cement pillar and then to the ground, and repeatedly tased him. Defendant later was charged with resisting arrest, in addition to the original disorderly conduct charge, and went to trial on both charges. At trial, defendant raised a defense of self-defense to the resisting arrest charge.

At the close of evidence, the trial court proposed a set of jury instructions to the parties, including Uniform Criminal Jury Instruction (UCrJI) 1227, which describes when a person may use physical force for self-defense in response to an officer's use of unreasonable force in making an arrest.[1] The trial court asked defendant and the state

---

[1] At the time, UCrJI 1227 stated:

"The defense of self-defense has been raised.

"A peace officer may use physical force on a person being arrested only when and to the extent the officer reasonably believes it is necessary to make an arrest. If a person being arrested physically opposes an arresting officer, the officer may use reasonable force to overcome the opposition.

"If, however, the officer uses unreasonable physical force to arrest a person who is offering no unlawful resistance, that person may use physical force for self-defense from what the person reasonably believes to be the use or imminent use of unlawful physical force by the officer. In defending, the

if they had any objections to the proposed instructions. Neither party objected to any of the trial court's proposed instructions, including UCrJI 1227. Defendant did, however, request that the court give the following special instruction defining "unreasonable physical force" for purposes of his self-defense claim:

> "When analyzing a claim of Self-Defense to the charge of Resisting Arrest, the jury shall find that 'unreasonable physical force' by the officer[s] making the arrest exists if the defendant reasonably believed that the officers' use of force was disproportionate in the circumstances.

> "If the jury finds that the defendant reasonably believed that the officers' use of force was disproportionate in the circumstances, the jury must then decide whether the defendant reasonably believed that his own use of force in response was necessary in the circumstances."

The trial court declined to give the requested instruction, stating that the uniform jury instruction was "sufficient." The court gave the jury the set of instructions that it had proposed, including UCrJI 1227. After the jury was instructed, defendant formally excepted to the trial court's refusal to give his requested special instruction, but he did not except (formally or otherwise) to the trial court having given UCrJI 1227. The jury found defendant guilty on both the disorderly conduct charge and the resisting arrest charge, and defendant appealed.

Shortly after defendant initiated his appeal, this court decided *State v. Oliphant*, 347 Or 175, 218 P3d 1281 (2009), which dealt with a number of uniform jury instructions, including UCrJI 1227, pertaining to the defense of self-defense in the context of a prosecution for resisting arrest. *Oliphant* held, among other things, that UCrJI 1227 was not a correct statement of an arrestee's right of self-defense. In particular, *Oliphant* faulted the instruction

---

person may only use that degree of force which he reasonably believes to be necessary.

> "The burden of proof is on the state to prove beyond a reasonable doubt that this defense does not apply."

UCrJI 1227 has since been revised consistently with this court's decision in *State v. Oliphant*, 347 Or 175, 218 P3d 1281 (2009). Throughout this opinion, when we refer to UCrJI 1227, we mean the above-quoted version.

because it focused on whether the police officer reasonably believed that the degree of force he or she used was necessary, when an arrestee's right of self-defense depends instead on whether the arrestee reasonably believes that the officer is using an unlawful degree of force to make the arrest. 347 Or at 193-94.

Relying on *Oliphant*, defendant in this case argued on appeal that the trial court had erred in two ways: (1) in refusing to give his requested special instruction (which focused on whether defendant reasonably believed that unlawful force was being used against him at the relevant time); and (2) in giving the uniform instruction, UCrJI 1227. With regard to that second claim of error, defendant acknowledged that he had not objected to the uniform instruction. But he urged that, in light of *Oliphant*, giving that instruction was "plain error," and he asked the Court of Appeals to exercise its discretion to correct that error. The state argued against plain error review of the UCrJI 1227 claim and responded to defendant's other claim of instructional error on the merits.[2]

Notably, the state did not raise ORCP 59 H as a bar to appellate review of either of defendant's claims. The Court of Appeals raised that rule on its own initiative, noting its independent duty to determine whether appellants have adequately raised and preserved their present claims before the trial court. *State v. Vanornum*, 250 Or App 693, 697, 282 P3d 908 (2012). The court began by observing that ORCP 59 H(1) provides that a party "may not obtain review on appeal of an asserted [instructional] error *** unless the party who seeks to appeal identified the asserted error to the trial court." *Id*. at 697. The court further observed that ORCP 59 H, although otherwise a rule of civil procedure only, applies to criminal actions as a result of ORS 136.330(2).[3] *Id*. The Court of Appeals concluded that defendant's claim regarding UCrJI 1227 was not reviewable, even under the

---

[2] Specifically, the state responded that defendant's requested instruction was an incorrect statement of the law and was not supported by the evidence.

[3] ORS 136.330(2) provides: "ORCP 59 H applies to and regulates exceptions in criminal actions." The parties appear to agree that ORS 136.330(2) makes ORCP 59 H applicable in criminal trials. They disagree as to whether it makes ORCP 59 H applicable in the context of criminal appeals.

plain error doctrine, because defendant had not raised the claim at trial as ORCP 59 H(1) requires. *Id.* at 699. As to defendant's claim that the trial court had erred in refusing to give his requested instruction on self-defense, the court concluded that defendant had failed to identify the asserted error to the trial court "with particularity," as ORCP 59 H(2) requires, thus precluding appellate review of that claim of error as well. *Id.* at 698. Accordingly, the Court of Appeals affirmed defendant's conviction for resisting arrest without reaching the merits of his claims.

Before this court, defendant argues that ORCP 59 H did not preclude the Court of Appeals from reviewing the merits of his claims of instructional error. Defendant contends that neither the Council on Court Procedures, which drafted ORCP 59 H, nor the legislature, which enacted ORS 136.330(2) and, thus, made the rule applicable to "criminal actions," intended to dictate to appellate courts what claims of error they may and may not review. Rather, in defendant's view, the rule was intended to describe to litigants and trial courts what must be done to preserve instructional error for review (or new trial motions). It follows, defendant argues, that ORCP 59 H does not preclude plain error review and does not bind appellate courts to any stricter preservation standards than they otherwise would apply under their own authority.[4] Defendant concludes, finally, that, under the preservation and plain error standards that this court has developed, his claims of instructional error in this case are reviewable.

As the parties recognize, the initial issue presented by this case is one of interpretation—whether ORCP 59 H dictates preservation standards for instructional error to

---

[4] Defendant also suggests that, regardless of what ORCP 59 H means, any effort by the Council on Court Procedures or the legislature to dictate preservation requirements to appellate courts is *ultra vires* and without force. That presents a potentially interesting issue, especially with respect to "plain error" review. *See, e.g., State v. Laundy*, 103 Or 503, 510, 206 P 290 (1922) (on rehearing) (by rule, court "reserves the right" to review plain error in furtherance of justice; court retains such authority at least in absence of "an express statute prohibiting it" from reviewing plain errors). And for reasons that the concurrence points out, the council's (as opposed to the legislature's) authority to interfere with plain error review would be particularly problematic. *See generally* 354 Or at ___ (Landau, J., concurring). Because we agree with defendant's interpretation of the rule, however, we need not consider defendant's *ultra vires* argument.

appellate courts, or instead, instructs litigants and trial courts on the procedure in the trial court for ensuring preservation of such claims. Because ORCP 59 H was promulgated by the Council on Court Procedures and accepted by the legislature without amendment, the intent of the council governs the interpretation of the rule.[5] *A. G. v. Guitron*, 351 Or 465, 479, 268 P3d 589 (2011); *Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 382 n 2, 8 P3d 200 (2000), *adh'd to on recons*, 331 Or 595, 18 P3d 1096 (2001). To discern that intent, we use an analytical process that parallels the one we use to interpret statutes—that is, we examine text, context, and, if helpful, legislative history. *Guitron*, 351 Or at 479.

ORCP 59 H is part of a rule that deals with instructions to and deliberations by juries. As relevant here, it provides:

"(1)  *** A party may not obtain review on appeal of an asserted error by a trial court in submitting or refusing to submit a statement of issues to a jury pursuant to subsection C (2) of this rule or in giving or refusing to give an instruction to a jury unless the party who seeks to appeal identified the asserted error to the trial court and made a notation of exception immediately after the court instructed the jury.

"(2)  *** A party shall state with particularity any point of exception to the trial judge. A party shall make a notation of exception either orally on the record or in a writing filed with the court."

The initial question that this case raises—whether ORCP 59 H controls appellate court review of claims of instructional error—arises because subsection (1) declares that "a party may not obtain review on appeal" of a trial court's asserted error in giving or refusing to give a jury instruction unless the party identified the asserted error to the trial court and made a timely notation of exception.

The state contends that the phrase "a party may not obtain review on appeal" can be read to mean only one

---

[5] Under ORS 1.735(1), all rules of civil procedure and amendments adopted by the council must be submitted to the Legislative Assembly "at the beginning of each odd-numbered year regular session and shall go into effect on January 1 following the close of that session ***. The Legislative Assembly may, by statute, amend, repeal or supplement any of the rules."

thing—that an appellate court is barred from reviewing an instructional error if a party, at trial, did not identify and take exception to the error as the rule requires. Defendant, urges, however that the wording is susceptible to an alternative meaning. According to defendant, because the operative words are directed at trial litigants ("a party") and not at the appellate courts, the rule can plausibly be understood to identify a procedure for objecting in the trial court to instructional error and to warn litigants that they "may not obtain review" of the error if they fail to follow that procedure. Under that reading of the rule, it remains for the appellate courts to decide what is required to preserve a claim of instructional error for review.

Considering only the words of the rule itself, the state's reading seems the most natural one. But when the rule is read in context, rather than in isolation, defendant's reading takes on more force. Of particular importance is ORS 1.735(1), which generally directs the Council on Court Procedures to promulgate the rules governing "pleading, practice and procedure *** in all civil proceedings in all courts of the state," *i.e.*, the Oregon Rules of Civil Procedure. The statute makes clear that the "courts of the state" to which it refers are trial courts, not appellate courts. It does so by explicitly declaring that "[t]he rules authorized by this section do *not i*nclude *** rules of *appellate* procedure." *Id*. (emphases added).

Along similar lines, ORCP 1 A, the first rule in the Oregon Rules of Civil Procedure, states:

> "These rules govern procedure and practice in all *circuit courts* of this state, except in the small claims department of the circuit courts, for all civil actions and special proceedings ***. These rules shall *also* govern practice and procedure in all civil actions and special proceedings *** for all other courts of this state *to the extent they are made applicable to such courts by rule or statute*."

(Emphases added.) By their express terms, ORS 1.735(1) and ORCP 1 A reflect the legislature's and the council's intent that, in general, an Oregon Rule of Civil Procedure will not govern procedure in appellate courts unless, as set forth in ORCP 1 A, a statute or rule specifically declares that the

rule applies to those courts. *See, e.g.*, *[McCarthy v. Oregon Freeze Dry, Inc.](#)*, 327 Or 84, 89-90, 957 P2d 1200 (1998) (in light of ORS 1.735, attorney fee provisions of ORCP 68, "cannot be read plausibly to govern a claim for attorney fees in an appellate court"); *[Lincoln Loan Co. v. City of Portland](#)*, 335 Or 105, 110-11, 59 P3d 521 (2002) (in light of ORS 1.735 and ORCP 1, term "judgment" in ORCP 71 B refers to circuit court judgments only, not appellate judgments).

The state argues, however, that ORCP 59 H is such a rule—*i.e.,* one specifically "made applicable" to appellate courts "by rule or statute"—and thus is an exception to the rules' usual narrow scope of application. In that regard, the state first relies on the fact that ORCP 59 H itself refers to proceedings on appeal by providing that a party who fails to except to an instruction in the required manner "may not obtain review on appeal." As we have explained, however, that portion of the rule expressly refers to parties and what they may expect, rather than to courts and what they may or may not do. Because of that wording choice, the rule can be understood in more than one way. The text of the rule alone does not resolve whether ORCP 59 H is directed to trial proceedings only or whether it also controls appellate court review of claims of instructional error.

The state also points to ORS 136.330(2), which provides that "ORCP 59 H applies to and regulates exceptions in criminal actions." The state urges that, because ORS 136.330(2) makes ORCP 59 H applicable to "criminal actions," and because the legislature at times uses the term "criminal action" in a way that subsumes appellate as well as trial court proceedings, ORS 136.330(2) is a statute by which ORCP 59 H is "made applicable" to appellate courts within the meaning of ORCP 1 A.

ORCP 1 A, however, is more exacting in what it requires. Textually, it distinguishes between the courts in which the rules apply ("circuit courts," "other courts to the extent they are made applicable *** by rule or statute") and the types of cases in which the rules apply ("civil actions and special proceedings"). ORCP 1 A thus requires more than a generic reference to "criminal actions" to make an ORCP applicable to appellate courts. Instead, it requires a rule or

statute to expressly make a particular ORCP applicable to the appellate courts. ORS 136.330(2) does not do that.

We therefore conclude that ORS 1.735(1) and ORCP 1 A provide general contextual support for defendant's view that ORCP 59 H does not impose requirements that control whether or when a claim of instructional error is preserved for appellate review. We further conclude that ORS 136.330(2) does not point in the opposite direction. We, therefore, turn to legislative history to see if it provides additional or different insight into the meaning of ORCP 59 H or, for that matter, the meaning of ORS 136.330(2).[6]

Because ORCP 59 H became effective without legislative amendment, the relevant legislative history is that of the rule's promulgation by the council. *Guitron*, 351 Or at 479-83. In particular, we look to the meeting minutes, committee reports, drafts, and commentary collected and published by the council in *Legislative History Relating to the Promulgation of the Oregon Rules of Civil Procedure* (1979) and similar publications. *See Guitron*, 351 Or at 480 n 13 (identifying sources of relevant history).

The original version of ORCP 59 H that the council promulgated in 1978 differed from the current version primarily in that its requirements of pointing out a claim of instructional error to the trial court and noting an exception after the jury has been instructed applied only to the instructions that the trial court gave, not to those that the trial court refused to give. *See Beall Transport Equipment Co. v. Southern Pacific*, 335 Or 130, 139-41, 60 P3d 530

---

[6] The parties also cite prior case law as context for us to consider. *See, e.g.*, *State v. Toevs*, 327 Or 525, 532, 964 P2d 1007 (1998) (in interpreting statute, court examines text and context, including court's prior interpretations of the same statute or earlier versions of that statute). We have reviewed those cases and conclude that they shed no contextual light on whether ORCP 59 H controls preservation for purposes of appellate review. Cases citing *statutory* predecessors to ORCP 59 H are not necessarily helpful, because they were not rules adopted by the council with the accompanying context of ORS 1.735(1) and ORCP 1 A which limit the council's authority generally to adopting rules for trial courts. Likewise, cases citing ORCP 59 H itself are not helpful because, by definition, they postdate the rule's promulgation and would not have informed the council's understanding of the rule. In all events, the issue raised in this case—whether ORCP 59 H governs when appellate courts can review claims of instructional error—was not raised in those cases, and this court has not before directly addressed and authoritatively resolved it.

(2002) (discussing original rule; observing that neither it nor court's preservation jurisprudence required exception to trial court's refusal to give instruction). In much the same wording of *former* ORS 17.510 (1979) and *former* ORS 17.515 (1979), which it replaced, ORCP 59 H provided:

> "No statement of issues submitted to the jury pursuant to subsection C (2) of this rule and no instruction given to a jury shall be subject to review upon appeal unless its error, if any, was pointed out to the judge who gave it and unless a notation of an exception is made immediately after the court instructs the jury. Any point of an exception shall be particularly stated and taken down by the reporter or delivered in writing to the judge. It shall be unnecessary to note an exception in court to any other ruling made. All adverse rulings, including failure to give a requested instruction, or a requested statement of issues, except those contained in instructions and statements of issues given, shall import an exception in favor of the party against whom the ruling was made."

That wording was proposed to the council in October 1978 by Professor Fred Merrill, the council's Executive Director at the time. After setting out the proposed wording, Professor Merrill explained that he had reviewed the case law bearing on the requirements of the statutes from which the wording had been borrowed and had determined that it provided inconsistent guidance as to whether a request to give an instruction preserved a claim that the trial court erred in giving a different instruction on the same point. Professor Merrill explained:

> "I did not change the rule draft to try to deal with the cases. I cannot figure out exactly what the applicable rule is supposed to be. Also, the cases cited \*\*\* are related to appellate procedure. The exception rule is apparently put in our rules because it specifies what should be done as part of trial procedure and the taking of an exception might preserve a right of new trial. We cannot, however, control what the appellate court will consider as error."

Memorandum, Council on Court Procedures, Oct 30, 1978, 11. Later, when the council retained the same wording in its final draft of ORCP 59 H, it included the following commentary, which expressly notes that the rule is directed

to procedures in trial courts and does not bind appellate courts:

> "Section 59 H is based on ORS 17.510 and 17.515(1) and (2). The section is included as it does describe conduct in the trial court. It also provides a basis for new trial in ORCP 64 B(7). The Council cannot make rules of appellate procedure and the question of preserving error on appeal is one determined by appellate courts."

Comment, Final Draft, Proposed Oregon Rules of Civil Procedure, Nov 24, 1978, 179-80.

The council presented the Proposed Oregon Rules of Civil Procedure, including ORCP 59 H, to the legislature in 1979. Suggested amendments to the proposed rules were submitted to the legislature in House Bill (HB) 3131 (1979). No amendments to ORCP 59 H were proposed in HB 3131. The bill did, however, contain a proposal to amend ORS 136.330(2) to refer to ORCP 59 H rather than to its statutory predecessors. Specifically, it proposed to amend that statute to provide: "ORCP 59 H applies to and regulates exceptions in criminal actions."[7]

During the legislature's consideration of HB 3131, members of the council repeatedly described to the legislature the limited application of the rules generally and of ORCP 59 H in particular. For example, the Chair of the Council, Donald McEwan, explained to the Joint Committee on the Judiciary that "the council has no jurisdiction to promulgate *** rules of appellate procedure." Minutes, Joint House-Senate Committee on the Judiciary, Feb 6, 1979, 1. Professor Merrill similarly explained to the committee that "the only state courts the Council can make rules for are state trial courts." Minutes, Joint House-Senate Committee on the Judiciary, Feb 15, 1979, 2.

The council submitted a summary of the proposed rules to the joint committee, which described ORCP 59 H in the following terms:

> "Section 59 H is a simplified redraft of the material contained in ORS 17.505 through 17.515. An exception is the

---

[7] The version of the statute that HB 3131 amended had provided: "ORS 17.505 to 17.515 apply to and regulate exceptions in criminal actions." ORS 136.330(2) (1977).

procedure for objecting to the content of instructions; generally the exception should be made promptly and clearly to give the trial judge an opportunity to correct erroneous instructions and avoid appeals. \* \* \* The appealability of an improper instruction given without objection, after a correct instruction is requested, is not clear in Oregon. This rule cannot control appellate procedure, but attempts to clarify the exception procedure which takes place in the trial court and relates to availability of new trial under Rule 64 B(7)."

Exhibit 22, Summary of Rules 50-64, Joint House-Senate Committee on the Judiciary, Mar 15, 1979, p 5. Professor Merrill emphasized the same point—that ORCP 59 H would not bind the appellate courts—in his testimony to the joint committee:

"The overlay on [ORCP 59 H] is that the Council on Court Procedures does not make rules of appellate procedure and can't tell the \* \* \* Supreme Court under what circumstances and what can be the basis of appealable error.

"\* \* \* \* \*

"This rule is in here because we \* \* \* have to specify the procedure to be followed in the trial court. And also the question of raising an exception bears upon the availability of a new trial under Rule 64, so it has to be covered in our rules."

Tape Recording, Joint House-Senate Committee on the Judiciary, Mar 15, 1979, Tape 22, Side 2.

Legislative history is rarely so on point and rarely so unequivocal. When the council adopted ORCP 59 H, it understood and intended that the rule would specify the procedure for objecting to instructional error in trial courts, and that the rule's admonition that an appellant "may not obtain review on appeal" in the absence of a proper exception did not and could not control the authority of appellate courts with respect to preservation. That understanding was placed before the legislature at the same time that the legislature amended ORS 136.330(2) to make ORCP 59 H applicable to "criminal actions." The history thus implicitly refutes the suggestion that, in enacting ORS 136.330(2), the legislature intended ORCP 59 H to control appellate court review in criminal appeals.

The state nevertheless contends that the views expressed in the material quoted above are unpersuasive because "those who subsequently amended ORCP 59 H recognized that it applies to and governs the scope of appellate review." The state refers to the fact that the rule was amended in 2004, primarily in response to concerns raised by one council member—then Oregon Supreme Court Justice Robert Durham. Justice Durham was concerned with the original rule's statement that "failure to give a requested instruction *** shall import an exception in favor of the party against whom the ruling was made." He, therefore, suggested that the rule be amended to remove that statement and add a requirement that a party assigning error to a refusal to give a requested instruction first have apprised the trial court of the reasoning and authority supporting the requested instruction. Justice Durham expressed those concerns to the council in a letter to the council's chair, Kathryn Clarke. In the letter, Justice Durham acknowledged that the concept of an automatically implied exception that he found objectionable might be read as

> "pertain[ing] only to the conduct of the parties in the trial court, and does not alter the obligation of a party on appeal to demonstrate proper preservation, including a suitable explanation of the asserted error to the trial court, of a ruling assigned as error on appeal.
>
> "[But t]he problem with th[at] construction is that, despite its facial appeal (because it would require no rule amendment), it does not account for the reference to the bar to appellate review that appears in the first sentence of ORCP 59 H."

Letter, Justice Robert D. Durham to Council Chair Kathryn H. Clarke, Council on Court Procedures, Oct 15, 2003, 3.

The state makes no claim that the 2004 amendments to ORCP 59 H reflected a change in *the council's* understanding of the rule's effect in the appellate context.[8]

---

[8] Indeed, the actual changes that the council made to the rule would not support such a claim. Although the 2004 amendment significantly modified the wording of the entire rule, the only apparent substantive change was to extend the rule to requested instructions that a trial court refused to give. In other words, as amended, the rule was changed so that a party had to identify the error and note an exception to the trial court's refusal to give a requested instruction

Rather, the state appears to offer the history of those amendments to show only that one council member agreed with the state's view of the plain meaning of the text of ORCP 59 H. The state's point is a particularly limited one. It is not that the 2004 legislative history is dispositive. It is only that, "given the plain text of the rule, the comments of early drafters [that support defendant's interpretation of ORCP 59 H] can be given no weight."

But, as we have already discussed, the "plain text" of ORCP 59 H is not so plain. It is, in fact, susceptible to the interpretation that defendant urges (and that, to all appearances, the original drafters of the rule intended)—*viz.*, that the rule's requirements for preserving instructional error are directed to trial litigants and trial courts and do not bind appellate courts or control what they may or may not review. The fact that Justice Durham may have expressed some disagreement with that understanding when ORCP 59 H was amended in 2004 does not persuade us that it is incorrect. Nor does it persuade us that we should disregard or otherwise give no weight to the history of the promulgation of the original rule. That history is illuminating and shows that, in promulgating ORCP 59 H, the council understood and intended that the rule would not control appellate court review and that the legislature did not alter that intended meaning when it expanded the rule's scope of application to include "criminal actions."

The text of ORCP 59 H, its relevant context, and its history all lead us to conclude that that rule was not intended to govern preservation of instructional error for purposes of appellate court review or to preclude appellate courts from reaching plain errors. Instead, in promulgating ORCP 59 H, the council left the announcement and development of those rules to the appellate courts. When the legislature simultaneously amended ORS 136.330(2) to extend ORCP 59 H to criminal cases generally, it did so without any understanding that the rule would apply differently to those cases. As a result, ORCP 59 H, as cross-referenced

---

with particularity, just as the party must do to preserve the error in the instructions that the trial court opts to give. With respect to whether the rule applies to or controls review by appellate courts, the wording of the 2004 amendment was as obscure as the wording it replaced.

in that statute, has no broader scope or different meaning than the rule standing alone. Necessarily, then, in criminal cases as well as civil ones, ORCP 59 H does not govern preservation of instructional error or preclude an appellate court from reviewing a claim of error pursuant to the court's traditional plain error doctrine.

With that conclusion in place, we turn to defendant's two claims of instructional error in this case. The first is defendant's claim that the trial court committed plain error by giving UCrJI 1227, which this court in *Oliphant* determined was not a correct statement of the law. In the Court of Appeals, defendant asked the court to exercise its discretion to review the error as "plain error" in accordance with ORAP 5.45(1) and the plain error doctrine. The Court of Appeals declined to do so, reasoning that, under ORCP 59 H(1), it could not. As we have determined, however, that reasoning was incorrect.

The state argues, however, that, even if ORCP 59 H does not bar appellate court plain error review, such plain error review is not available in this instance because the claimed error does not qualify as "plain." For an error to be plain error, it must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences. *See, e.g.*, *State v. Ramirez*, 343 Or 505, 511-12, 173 P3d 817 (2007), *amended on recons*, 344 Or 195, 179 P3d 673 (2008) (stating requirements for plain error review); *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006) (same); *Ailes v. Portland Meadows*, 312 Or 376, 381-82, 823 P2d 956 (1991) (same). The parties appear to agree that the claimed error in instructing the jury in accordance with UCrJI 1227 is one of law that appears on the record. They disagree, however, whether the claimed error was obvious and not reasonably in dispute.

Defendant relies on this court's holding in *Oliphant,* that UCrJI 1227 "impermissibly shifts the focus of the jury's deliberations on a defendant's self-defense claim from what the defendant reasonably believes to what the officer believes." 347 Or at 198. According to defendant, giving the instruction is error in any case where self-defense to

resisting arrest is raised. The state responds by pointing out that the trial court in *Oliphant* had given the jury several instructions in addition to UCrJI 1227 that focused on the police officer's beliefs. *See id*. at 186-87 (quoting instructions). The state suggests that, because the instructions in this case did not involve that sort of repetition and did not involve the other instructional errors that *Oliphant* involved, giving UCrJI 1227 in this case was not error. The other instructions given in *Oliphant*, however, played no part in our assessment of UCrJI 1227. Rather, because of the possibility that the instruction might have been given again on retrial in *Oliphant*, we took the extra step of pointing out that UCrJI 1227 is "incorrect and should not be included in the instructions to the jury during the trial on remand." *Id*. at 198. That portion of our decision in *Oliphant* is dispositive here. In this case, the content of other instructions given or not given may bear on whether giving UCrJI 1227 was prejudicial. But the fact that the instruction is an incorrect statement of the law, and thus was error to give under our decision in *Oliphant*, is beyond reasonable dispute.[9]

Determining that a claimed error was error is only half of a two-part inquiry, however. The second step is for the reviewing court to determine whether to exercise its discretion to review the error. *Ailes*, 312 Or at 382. That discretion entails making a prudential call that takes into account an array of considerations, such as the competing interests of the parties, the nature of the case, the gravity of the error, and the ends of justice in the particular case. *See id*. at 382 n 6 (listing considerations for appellate courts to consider). Ultimately, a decision to review a plain error is one to be made with the "utmost caution" because such review

---

[9] In concluding that the instruction was error to give under *Oliphant*, we limit our consideration to the issue that the parties have disputed—whether *Oliphant* disapproved of the instruction generally or only in the context of the instructions given in that case. Because *Oliphant* was this court's decision, we are in a better position to resolve that issue than would be the Court of Appeals. The state has not argued that, in determining whether the error was obvious and beyond reasonable dispute, a reviewing court should consider the law as of the time the trial court made its decision, as opposed to as of the time that the case is on direct appeal. The Court of Appeals has concluded that plain error should be determined by reference to the law existing as of the time of the appeal. *State v. Jury*, 185 Or App 132, 138-39, 57 P3d 970 (2002), *rev den* 335 Or 504 (2003). This court has not previously taken up that question, and has not been asked to do so in this case.

undercuts the policies served by the preservation doctrine. *Id.* at 382. Although this court could undertake that discretionary assessment, the Court of Appeals is the error-correcting tribunal to which claims of error and plain error may be presented as a matter of right. The nature of discretion is that it is best exercised by the entity principally charged with its exercise. In this instance, that is the Court of Appeals. We, therefore, conclude that the appropriate disposition is to remand to the Court of Appeals to exercise its discretion whether to consider defendant's claim of plain error.

Defendant's remaining claim of error is that the trial court incorrectly refused to give his requested instruction on the meaning of "unreasonable physical force." As we have described, the Court of Appeals declined to consider that claim because it concluded that defendant had not preserved his objection to the failure to give the instruction with the "particularity" required by ORCP 59 H(2). As we have determined, however, ORCP 59 H does not set the standard by which the appellate courts will determine if a claim of instructional error is preserved. Instead, preservation must be determined by this court's preservation jurisprudence.[10]

Because we already have determined that we should remand this case to the Court of Appeals on defendant's request for plain error review, it is appropriate to remand on defendant's remaining claim of error as well. Depending on whether the Court of Appeals exercises its discretion to reach defendant's claim of plain error, and depending on any disposition that might flow from that decision, the court may determine that it need not reach that claim.

If the Court of Appeals does reach the claim, the issue will be a fact-bound one appropriate for the Court of Appeals' resolution in the first instance. There is no dispute in this case about the core preservation principles that apply under our case law or the policies they serve. *See, e.g.*, *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995) (discussing

---

[10] There is some suggestion in the legislative history of ORCP 59 H(2) that the Council of Court Procedures intended the particularity requirement to reflect this court's preservation case law. Whether or not that was the council's intent, the result is the same: Decisions in appellate courts regarding whether a claim of instructional error has been preserved for review are controlled by this court's preservation jurisprudence.

policies); *Jett v. Ford Motor Co.*, 335 Or 493, 502-03, 72 P3d 71 (2003) (same). Those policies ensure that trial courts have an opportunity to understand and correct their own possible errors and that the parties are not "taken by surprise, misled, or denied opportunities to meet an argument." *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011) (quoting *Davis*, 320 Or at 737); *see also State ex rel Juv. Dept. v. S. P.*, 346 Or 592, 604, 215 P3d 847 (2009) (describing same policies). Although the preservation requirement "is not something that can be explained by a neat verbal formula," *Walker*, 350 Or at 550, the essential goal is straightforward: "[A] party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). On remand, if the Court of Appeals reaches this claim of error, it should resolve the preservation issue based on the principles announced in our case law, not based on ORCP 59 H(1). [11]

The decision of the Court of Appeals is reversed, and the case is remanded to that court for further proceedings.

**LANDAU, J.,** concurring.

I agree with the court's opinion in its entirety. I write separately to address an issue that the parties did not raise, but that nevertheless made a difference in the outcome

---

[11] In its opinion, the Court of Appeals noted that the particularity requirement of ORCP 59 H(2) is "congruent with the more general directive" in *Wyatt*, 331 Or at 343, that objections be stated with enough specificity to allow the trial court to "consider an correct the error immediately." *Vanornun*, 250 Or App at 698. The court's analysis, however, focused on whether defendant's argument to the trial court met the "particularity" requirement of ORCP 59 H(2) and the requirement in ORCP 59 H(1) that the appellant "identif[y] the asserted error." *Id*. at 698-99. ORCP 59 H(1) applies to an objection to a refusal to give an instruction as well as to an instruction given, without distinguishing between them. In practice, however, there is often an important difference. For example, the terms of a requested, but refused, instruction may sometimes go a long way to putting a trial court on notice of the deficiency in the trial court's instructions if the requested instruction is not given. *See , e.g.*, *Roberts v. Mitchell Bros.*, 289 Or 119, 127-31, 611 P2d 297 (1980) (party adequately preserved error by requesting instruction consistent with party's legal theory; in circumstances presented, party did not also have to take issue with instruction that trial court gave to sufficiently apprise court of error). All in all, because of our uncertainty about whether the Court of Appeals will reach this claim of error, or how differently it might assess the claim without reference to ORCP 59 H, we conclude that a remand is appropriate.

of this case and could well make a difference in future cases. That issue concerns the nature of the Oregon Rules of Civil Procedure—specifically, whether they are statutes.

In brief, some are statutes, and some are not. It depends on whether they were affirmatively enacted into law by the legislature. ORS 1.735(1) provides that the Council on Court Procedures is authorized to promulgate rules of trial procedure and that any such rules must be "submitted to the Legislative Assembly" at the beginning of each session in odd-numbered years. *Id.* The legislature then "may, by statute, amend, repeal or supplement any of the rules." *Id.* If the legislature chooses not to amend, repeal, or supplement the rules that the council submits, those rules simply "go into effect" on January 1 following the end of the legislative session. *Id.* When they "go into effect," however, they do so as rules, not as statutes.

That is because the council itself lacks authority to enact statutes. The state constitution prohibits the prospective delegation of the authority to enact statutes to another body. *Seale et al v. McKennon*, 215 Or 562, 575-73, 336 P2d 340 (1959) (legislature may not prospectively adopt federal laws and regulations that do not yet exist); *Van Winkle v. Fred Meyer, Inc.*, 151 Or 455, 461-62, 49 P2d 1140 (1935) (because the power to legislate "is vested exclusively in the legislative assembly," the legislature "cannot confer upon any person, officer, agency, or tribunal the power to determine what the law shall be").[1] Instead, the constitution vests the legislative power in the legislative branch, subject only to the powers of the initiative and referendum. *Id.* The constitution further provides that, when the legislature does create statutes, it must do so by affirmative act—specifically, majority approval by both houses of the Legislative Assembly, Or Const, Art IV, § 25 ("a majority of all the members elected to each House shall be necessary to pass every bill"; bills to raise revenue require three-fifths majority), and presentment to the governor for signature, Art V, § 15b(1) ("Every bill which shall have passed the Legislative Assembly shall, before it becomes a law, be presented to the Governor[.]").

---

[1] And, even assuming the legislature could delegate lawmaking authority to some other body, it would be odd, indeed, if that body were to include—as the Council on Court Procedures does by statute—members of the judicial branch.

Thus, if the legislature takes no action on rules adopted by the Council, that inaction does not mean that the rules go into effect as statutes. The notion that the legislature can create statutory law by doing nothing is a constitutional impossibility. That does not mean that the Oregon Rules of Civil Procedure lack force. They have the force of rules promulgated by an entity authorized by the legislature to create them. But they are not statutes, unless they were affirmatively approved or amended by the legislature.

The distinction matters. To the extent that any rule conflicts with a statute enacted by the legislature, the rule is invalid. *See, e.g.*, *Garrison v. Dept. of Rev.*, 345 Or 544, 548, 200 P3d 126 (2008) ("We agree that a judicial or agency rule that conflicts with a statute is invalid[.]").

Take this case, for example. The statute creating the council and authorizing it to adopt rules expressly limits the authority of the council to adopting rules of trial—and not appellate—procedure. ORS 1.735(1) ("The rules authorized by this section do not include *** rules of appellate procedure."). ORCP 59 H, however, provides that, "[a] party may not obtain appellate review of an asserted error by a trial court" unless specified preservation requirements have been met. To the extent that the rule was adopted to preclude appellate review without following specified rules of preservation, then, the rule would be invalid as inconsistent with the statutory authority of the council. And, in fact, that is one of the reasons that we chose in this case to give the rule a different construction.

A different result might have obtained, however, had ORCP 59 H been enacted by the legislature as a statute. In that case, the fact that the rule might otherwise exceed the authority of the council would become irrelevant, because the rule would have been adopted by the legislature. Any inconsistency between a legislatively adopted part of the rules and another statute would raise a question of legislative intent, resolved by application of garden-variety rules that pertain to conflicting statutes. *See, e.g.*, *Powers v. Quigley*, 345 Or 432, 438, 198 P3d 919 (2008) (identifying basic rules that govern the resolution of conflicts between statutes).

In point of fact, some of the Oregon Rules of Civil Procedure have been added or amended by statute. Those enactments are statutes. The rest, though, are not. What that means is that the Oregon Rules of Civil Procedure have become a bit of a hodgepodge, some rules having been adopted only by the Council and others having been adopted or amended by the legislature.

But that creates further problems. What happens when the legislature amends a rule, and the council later purports to change the rule as legislatively amended? That has actually occurred more than once. ORCP 18, for example, was originally adopted by the council and allowed to go into effect by legislative inaction in 1978. It was then amended by the legislature in 1987 to add ORCP 18 B. Or Laws 1987, ch 774, § 12a. Three years later, though, the council voted to "eliminate" ORCP 18 B, and the legislature took no action. Similarly, ORCP 55 was adopted by the council and allowed to go into effect without legislative amendment in 1978. Then, in 1995, the legislature amended the rule by adding ORCP 55 I. Or Laws 1995, ch 694 § 1. But after that, in 1998, the council voted to amend ORCP 55 I. And, in 2002, it voted to "delete" the rule in its entirety. I wonder by what authority the council purports to amend—much less to "eliminate" or "delete"—a statute. Certainly the legislature itself, or the people exercising their initiative power, may amend or repeal a statute. *Caruthers v. Myers*, 344 Or 596, 602, 189 P3d 1 (2008). But I am aware of no authority for the proposition that a legislatively created agency, commission, or council can do so. *See Garrison*, 345 Or at 549 ("[A] rule created within a statutory scheme cannot amend, alter, enlarge upon, or limit statutory wording."). That would seem to suggest that the council's purported amendments of legislatively adopted rules have no lawful effect.[2]

I raise this issue for three reasons. First, we need to be more careful about how our own opinions characterize the

---

[2] I have not attempted an exhaustive catalog of other rules that have been amended by both the legislature and the council, in that order. But a cursory review of the rules suggests that ORCP 21 A, 32 F, 36 B, 43 A, 54 A, 57 C, and ORCP 69 A and B are among them. In some cases, the legislature and the council amended different portions of the same rule, which makes determining which part of a given rule is statutory and which is not even more of a problem.

Oregon Rules of Civil Procedure. Oregon courts have not been consistent in their characterization of the rules, often referring to them generally as "statutes." *See, e.g.*, *Rodriguez v. The Holland, Inc.*, 328 Or 440, 445, 980 P2d 672 (1999) ("[T]he Oregon Rules of Civil Procedure provide statutory context for construing ORS 20.080[.]"); *Stupek v. Wyle Laboratories Corp.*, 327 Or 433, 442, 963 P2d 678 (1998) ("ORS 174.120 applies to civil procedure statutes other than the Oregon Rules of Civil Procedure."); *Garcia v. DMV*, 195 Or App 604, 608 n 5, 99 P3d 316 (2004) ("After enactment of the Oregon Rules of Civil Procedure, however, confusion arose because of inconsistencies between those rules and other statutes."); *Dept. of Rev. v. Faris*, 19 OTR 178, 186 (2006) ("There may be cases where a certain form is required by statute, such as Oregon Rule of Civil Procedure (ORCP) 7 F[.]").

Second, parties in future cases should be aware of the significant consequences that flow from the fact that only some parts of the rules are statutes, and then brief their cases accordingly.

Third, the current status of certain rules that have been serially amended by the legislature and the council is uncertain, at best. One solution would be to simply lay the Oregon Rules of Civil Procedure before the legislature for enactment in their entirety. Short of that, however, if the council or the legislature wishes particular rules to be treated as statutes, then those rules must be affirmatively enacted as statutes, in accordance with the law-making principles of the state constitution.

Brewer, J., joins in this concurring opinion.