No. 645                  September 5, 2024                  821

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of W. K. L.,
a Youth.
STATE OF OREGON,
*Respondent,*

*v.*

W. K. L,
*Appellant.*

Columbia County Circuit Court
20JU00976; A178262

Michael T. Clarke, Judge.

Argued and submitted December 20, 2023.

Kevin T. Lafky argued the cause for appellant. Also on the briefs were James P. Francis and Lafky and Lafky.

Patricia G. Rincon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Youth appeals from a judgment and disposition order, as well as an order of commitment, imposed after he admitted to a probation violation. In his single assignment of error, we understand youth to assert that the juvenile court erred in two ways: by not advising youth of the maximum penalty prior to his admission, and by accepting youth's admission and entering judgment when youth did not know the maximum penalty that could be imposed. We conclude that youth's argument is unpreserved and that the juvenile court did not plainly err. Accordingly, we affirm.

In 2020, youth admitted to conduct that would constitute attempted second-degree burglary and first-degree theft if committed by an adult. The trial court imposed a disposition of 24 months of probation. In 2021, youth's probation officer twice alleged that youth had violated the conditions of his probation. In early 2022, youth was charged in a petition with harassment and third-degree criminal mischief.

Youth's cases were consolidated, and in February 2022, youth came before the juvenile court for a contested hearing. At the start of that hearing, the parties informed the juvenile court that they had reached a negotiated resolution in which youth would admit to smoking marijuana in violation of his probation conditions and the state would dismiss three cases. The parties further informed the court that they had agreed that youth would be placed in the custody of Oregon Youth Authority (OYA). The parties did not have a written plea petition to present to the juvenile court because they had discussed the agreement late the night before and just confirmed the agreement that morning.

Prior to accepting youth's admission, the juvenile court informed youth that by making the admission, youth would waive his right to remain silent and his right to a trial on the matters in which the prosecution had the burden of proof. The juvenile court additionally asked youth whether he was under the influence of intoxicants and whether he had been unduly pressured to accept the agreement. After youth confirmed that neither of those circumstances was true, the juvenile court accepted youth's admission. The parties then

discussed whether youth would spend five or six years in OYA custody. The two options were based on the possible sentence for youth's original charges. Youth's attorney and the prosecutor agreed upon five years.

Youth and his mother then engaged in an extensive discussion with youth's attorney and other parties about the length of time that youth could expect to remain in an OYA facility. Youth and his mother were concerned that youth would be confined in an OYA facility for the entire five years of jurisdiction. Multiple parties explained to youth that the amount of time he remained in an OYA facility largely depended on his behavior and his progress in programs. Youth was told that if he did well in the facility, there was a possibility that he could be released to a less restrictive placement. During the discussion, youth indicated that he understood that OYA would supervise him for five years. After the discussion, the juvenile court entered judgment placing youth in the legal custody, care, placement, and supervision of OYA for five years. This appeal followed.

We turn first to whether youth's argument is preserved. Youth argues that he preserved the argument in the post-admission discussion about the amount of time he would remain in an OYA facility when both he and his mother "put on record in open court that neither of them understood the maximum sentence that could result from his plea." The state responds that youth's argument is unpreserved because after the attorneys agreed on a five-year term of OYA jurisdiction, youth did not challenge his admission on the ground that he did not know the maximum penalty. We agree with the state's argument.

After youth was informed on the record that he would be under OYA supervision for five years, he did not object to that length of time, nor did he indicate that he wanted to withdraw his admission.[1] Instead, youth indicated that he understood that he would be under OYA's supervision for five years; his concern was "how long could I be held in the facility[.]" Youth and his mother's questions about his placement while under OYA jurisdiction (which were thoroughly addressed by youth's attorney and other parties) did not amount to an

---

[1] Youth also never moved to set aside the judgment or order.

objection to the validity of youth's admission. Preservation requires that the party provide the court with an objection that is specific enough for the court to identify and correct the alleged error. *See State v. Vanornum*, 354 Or 614, 632, 317 P3d 889 (2013) (explaining that to preserve an issue, a party must "provide the * * * court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately" (internal quotation marks omitted)). Youth did not do that here.

Because youth did not preserve his argument, our review is for plain error. *See* ORAP 5.45(1), (4)(b), (7). Plain error review is a two-step process. We must first determine that the error is plain, which means that it is "an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *Vanornum*, 354 Or at 629. If those three elements are met, we must then determine whether to exercise our discretion to correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991).

We understand youth to make two arguments in support of his assignment of error. In his first, we understand youth to assert that the juvenile court erred when it did not inform him of the maximum sentence that could result from his admission before he made the admission. In his second, we understand youth to assert that the juvenile court erred when, prior to entering judgment, it did not withdraw its acceptance of youth's admission and give youth an opportunity to withdraw his admission because the post-admission discussion revealed that youth did not know the maximum term of OYA jurisdiction under the agreement.

We conclude that the juvenile court did not plainly err when it accepted youth's admission and entered judgment because the record is susceptible to competing inferences as to whether, at the relevant time, youth understood the maximum penalty that could be imposed. *See Vanornum*, 354 Or at 629 (holding that if a court has to "choose among competing inferences" there is no plain error). To be sure, the final decision that OYA would have jurisdiction over youth for five years did not occur until after the juvenile

court had accepted youth's admission. However, the potential term of OYA jurisdiction was controlled by the sentencing range for the prior charges that led to youth's probation, and the record permits a permissible inference that youth was informed of the maximum possible penalties at the prior disposition hearing for those charges.

Further, there is a permissible inference that youth and his attorney were aware that there were two possible sentencing options—five years or six years—and that youth's attorney was prepared to advocate for the lesser sentence. During a discussion about the length of youth's term of OYA supervision, the juvenile court counselor asked,

> "But for [the state] and [youth's attorney], I guess we do need to put your lawyer hats together and decide if it's five or six years. So he was adjudicated on an Attempted Burglary 2. And a Theft 1. So, it could potentially be six years. But it was the same case. So it could also be five."

Youth's attorney then argued that it should be five years "based on [the] two matters coming from the same case and the same criminal episode."

In addition, at the hearing, youth's attorney and other parties explained the nature of the five-year term of OYA supervision in detail, and youth expressed that he understood those explanations before the court entered judgment. In one of those exchanges, youth's counsel stated, "for the amount of time in the institution, [youth], *as we talked*, it could be as short as, you know, 60 days. It could be longer than that." (Emphasis added). And, to the extent that youth is relying upon youth's mother's statements to support that youth did not understand the maximum penalty, when mother expressed concern that youth had "enter[ed] a plea not knowing any of the details," youth's attorney responded that they already "went through all of those details." That evidence supports a permissible inference that, prior to the court entering judgment, youth understood the maximum penalty he could face as a result of his admission.

We therefore conclude that the juvenile court did not plainly err when it accepted youth's admission to a probation violation.

Affirmed.