No. 524 June 10, 2026 493

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of O. A. M. A.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

O. A. M. A.,
*Appellant.*

Washington County Circuit Court
23JU04108; A183229

Thomas A. Goldman, Judge.

Argued and submitted October 15, 2025.

Ginger Fitch argued the cause for appellant. Also on the briefs was Youth, Rights & Justice.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

In this juvenile delinquency proceeding, youth appeals a supplemental judgment awarding restitution in the amount of $12,808.98 to State Farm Insurance. Youth challenges that award in two assignments of error. First, he contends that the juvenile court plainly erred by ordering youth to pay restitution to State Farm because the state failed to identify State Farm as a victim before the juvenile court accepted youth's admission. In youth's view, the state's request was untimely under ORS 419C.450(1)(a), which requires the state to present evidence of the "nature and amount" of damages "prior to or at the time of adjudication." We conclude that it is not obvious or beyond reasonable dispute that ORS 419C.450(1)(a) requires the state to specifically identify the victim prior to or at the time of adjudication, and we thus reject youth's first assignment.

Second, youth argues that the evidence was insufficient to establish a causal connection between his conduct and the full amount of restitution because other individuals also participated in the theft. In particular, he contends that the juvenile court impermissibly relied on a video depicting the theft to conclude that youth worked "in concert" with the other individuals because that video was never formally admitted into evidence. However, youth's counsel played the video for the juvenile court and affirmatively invited it to rely on the video, arguing that it showed that youth was responsible for only a portion of the victim's losses. Accordingly, we conclude that youth invited any error below and his second assignment of error therefore does not provide a basis for reversal. We affirm.

The relevant facts are not in dispute. The state alleged by delinquency petition that youth had stolen jewelry from a kiosk in Washington Square Mall and was within the juvenile court's jurisdiction for that conduct, which, if committed by an adult, would constitute first-degree theft, ORS 164.055. Both the original and the amended petitions named the owner of the kiosk as the victim. At his adjudication hearing, youth admitted that he "did unlawfully and knowingly commit Theft of Property, in the value of more

than $1,000, which belonged to [kiosk owner]." The juvenile court accepted youth's admission and immediately proceeded to disposition.

At that point, a juvenile counselor reported that the value of the stolen property was "over $13,000" and recommended that youth be committed to the custody of the Oregon Youth Authority (OYA). A victim's advocate also advised the court that the kiosk owner had filed a claim with her insurance, which was still pending, and requested that the restitution hearing be set out at least 60 days. The district attorney then represented to the juvenile court that, "that was part of the Plea Agreement for restitution. * * * That [youth] stipulate to legal liability and for presentation of restitution either at disposition or at a future hearing." The juvenile court committed youth to the custody of OYA and set a date for the restitution hearing. The juvenile counselor then informed the court:

> "[T]he victim has requested an amount. [Youth's counsel] has that amount. Insurance and victim are in the process of getting that amount figured out, how much insurance is going to pay. So it's actually to the [y]outh's best interest the farther we go out because insurance may have paid some of it by then and it would be a lesser restitution amount."

At the restitution hearing, the state represented that "all parties have previously stipulated to restitution being presented at a different date and time than adjudication" and youth's counsel confirmed that was correct. The state then explained that it would be requesting $1,000 in restitution to be paid to the kiosk owner and $12,808.98 in restitution to be paid to State Farm. The owner of the kiosk testified that the value of the stolen jewelry was $13,808.98, and that the jewelry was insured by State Farm. She explained that she had paid a deductible of $1,000, and she would be compensated by State Farm for the remaining loss. On cross examination, youth's counsel played surveillance footage of the theft.[1] The kiosk owner testified that the video depicted multiple individuals, including youth, removing a

---

[1] The video was never formally admitted into evidence, and thus, it is not part of the record before us on appeal. Our description of the video is therefore based solely on the kiosk owner's testimony describing the video.

tarp and taking jewelry from the kiosk.[2] According to her testimony, youth can be seen in the video taking a "display[]of the bracelets" that held 147 bracelets worth $10 each.

In closing, the state argued that, even though youth did not commit the theft by himself, youth could nevertheless be held liable for the full amount of restitution because the video established that "this is an aid and abet situation, that these are people working in concert, working together for this loss." Youth's counsel argued that he should only be liable for $1,470, which reflected the value of the bracelet display, and relied on the video to support that argument:

> "However, in the video you could see that if we sort of say that the tarp was like a front door, someone else pulled that down, someone else, and others, started taking items and then made it so it was open. And when [youth] happened to come by then he took those items specifically as you saw, just that one rack of items.

> "And, so, we would argue that if Your Honor thinks he is—is liable for an amount, it would be the $1,470, not the full amount at this time."

The juvenile court ruled that youth could be held liable for the owner's full losses:

> "So, here's what I saw in that video, is someone pulled down the tarp. And a number of faces and hands dive in and start taking things. We see [youth] with that same group of people moments later. [Youth] is working in concert with them.

> "Now, just because he's not seen on camera the first time doesn't mean he's not right there. And the fact that he went back to the kiosk with them would imply that he is familiar with these people and working in concert with them. He knows these people.

> "If [youth] is upset about this not being joint and several, it would appear [youth] has it in his power to provide information to the State of Oregon to help alleviate the amount of restitution, to share this among those who are equally culpable for this Aggravated Theft, which was under-charged. This is a theft over $10,000.

---

[2] For reasons that are unclear on the record before us, besides youth, no other individuals were charged in connection with the theft.

"There are a lot of situations where, you know, we'd like to hold everyone responsible for their actions equally. Unfortunately at this point in time, the only person who I have in front of me, the only person who has entered an admission to this Theft in the First Degree, is [youth], who was clearly working with these other individuals in this coordinated theft.

"\* \* \* \* \*

"The amounts being requested are reasonable, based on market value. At this point in time [youth] will be held liable for the full sum of restitution, $13,808.98."

The juvenile court awarded restitution in two separate supplemental judgments, which required youth to pay the kiosk owner $1,000 and State Farm $12,808.98, respectively.[3] This appeal followed.

We first address youth's argument that the state's claim for restitution for State Farm was untimely under ORS 419C.450(1)(a), which requires the state to present restitution evidence prior to or at the time of adjudication. We review a restitution order for legal error and are bound by the juvenile court's factual findings if they are supported by any evidence in the record. *State v. R. D. M.*, 330 Or App 692, 694, 544 P3d 425 (2024). We similarly review questions of statutory interpretation for legal error. *Id.* Here, youth concedes that his argument regarding the timeliness of the state's restitution evidence is unpreserved, and he seeks plain error review. For an error to be plain, it must be an error of law, obvious and not reasonably in dispute, and apparent on the face of the record without requiring us to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013).

Youth argues that the state's request for restitution was untimely under ORS 419C.450(1)(a) because the state did not identify State Farm as a victim until the restitution hearing, which occurred two months after the adjudication

_____

[3] Youth appealed both supplemental judgments, which were then consolidated on appeal. Youth later moved to sever the appeals and dismiss the appeal of the supplemental judgment imposing $1,000 in restitution to the kiosk owner. We granted that motion, and therefore, our review in this case is limited to the supplemental judgment requiring youth to pay $12,808.98 in restitution to State Farm.

and dispositional hearing. Youth further contends that he did not clearly and unequivocally waive objection to the state's timely presentation of that evidence, and thus, in his view, the juvenile court lacked authority to impose restitution for State Farm. The state responds that ORS 419C.450(1)(a), on its face, does not expressly require the state to identify the victim specifically, and instead, simply requires the state to present evidence of the "nature and amount" of the restitution owed by youth. The state adds that, even if we conclude otherwise, youth waived objection to the delayed identification of the victim because he stipulated to the presentation of restitution evidence at disposition or a future hearing. For the reasons explained below, we conclude that it is not obvious or beyond reasonable dispute that the state's presentation of evidence was untimely, and consequently, that the juvenile court did not plainly err.

In order to seek a restitution award, ORS 419C.450 (1)(a) requires the state to present evidence of "the nature and amount of the injury, loss or damage" to the court "prior to or at the time of adjudication." We have previously addressed the timing requirements in ORS 419C.450 in *State v. M. A. S.*, 302 Or App 687, 462 P3d 284 (2020), in which we concluded that the state must present restitution evidence prior to "a determination of jurisdiction over a youth based on a finding of delinquency." *Id.* at 705. In that case, the juvenile court ruled to assert jurisdiction over the youth at the adjudication hearing. *Id.* at 692. The dispositional hearing occurred two months later, at which time the state requested restitution and presented evidence of the victim's damages. *Id.* at 691-92. Because the state's presentation of restitution evidence was untimely, we concluded that the juvenile court lacked authority to award the restitution. *Id.* at 705-06.

Applying *M. A. S.*, in *State v. L. G. S.-S.*, 307 Or App 208, 211-12, 475 P3d 922 (2020), we similarly concluded that the state's failure to present restitution evidence prior to or at the time of adjudication made its request untimely. There, the juvenile court accepted the youth's plea agreement, which identified six victims of the youth's conduct. *Id.* at 209. At the adjudication hearing, the state represented

to the court that it would not seek restitution, and it did not otherwise present any evidence of the named victims' damages. *Id.* at 210. At the dispositional hearing, which took place two weeks later, the state indicated for the first time that it would seek restitution. *Id.* At the restitution hearing, the state requested restitution for a victim named in the plea agreement as well as for Safeco Insurance, which was not a victim identified in the judgment. *Id.* The juvenile court awarded restitution to Safeco, over the youth's objection that the request was untimely under ORS 419C.450(1)(a). *Id.* We reversed, concluding that "when the court accepted [the] youth's plea and found him within its jurisdiction[,] the state [had] not present[ed] evidence to the court of injury, loss, or damage to Safeco Insurance." *Id.* at 212.

Youth argues that those cases require us to reverse. We disagree. In *L. G. S.-S.*, we did not clearly conclude that the state's failure to identify Safeco Insurance prior to adjudication, *standing alone*, made the state's presentation of restitution evidence untimely. Rather, the state's failure to present *any* evidence in support of restitution prior to adjudication violated the timing requirements of ORS 419C.450(1)(a). Moreover, because the state had also failed to timely request restitution for the victim named in the plea agreement, we declined to address "whether the fact that Safeco Insurance had subrogation rights to a named victim has any bearing on the timeliness of a restitution request." *L. G. S.-S.*, 307 Or App at 212.

By contrast, here, in the course of the adjudication and disposition hearing,

the state identified the kiosk owner as a victim, represented that the victim's losses totaled "over $13,000," stated that the victim had a claim pending with her insurance, and informed the court that youth had previously stipulated to legal liability and "for presentation of restitution either at disposition or at a future hearing." Youth argues that his stipulation did not apply to the delayed identification of State Farm as a victim. However, the stipulation broadly and unambiguously allows the state to present evidence of "restitution" after adjudication. Indeed, youth appears to concede that the stipulation applied to at least some of the evidence required by

ORS 419C.450(1)(a). For example, youth does not argue that the state failed to timely present evidence concerning the "nature and amount" of restitution, although that evidence was presented during the dispositional phase of the hearing, after the trial court accepted youth's admission. *See M. A. S.*, 302 Or App at 701 (describing "adjudication" and "disposition" as "distinct phases of delinquency proceedings). And youth's stipulation, on its face, does not narrow the scope of the evidence that the state could present after adjudication, meaning that any alleged limitations to that stipulation are not apparent on the record. Accordingly, the record is susceptible to an inference that youth agreed to the manner in which the disposition and restitution hearings proceeded.

    In sum, prior to the restitution hearing, youth was aware of the amount of restitution, and he knew the identity of the victim and that she was working with an insurance company. To be sure, State Farm was not named as the insurance company until the restitution hearing, and youth did not know, prior to that hearing, what portion of the total losses would be covered by State Farm. On that point, we acknowledge that the juvenile counselor made statements at the dispositional hearing which fairly implied that youth would be responsible only for those losses that insurance did not cover. However, the record also demonstrates that youth was aware of the total value of the stolen property and that he had stipulated to "legal liability" for that loss. Moreover, at the restitution hearing, youth contested the amount of restitution, but not on the basis that the counselor's statement allowed the state to seek only $1,000 to cover the kiosk owner's deductible. Instead, he argued that he was liable only for the value of the bracelet display, valued at $1,470. If he had prevailed on that theory, that amount would necessarily involve some award of restitution to both the kiosk owner and State Farm. Thus, even though youth did not know the exact allocation of loss between the victim and her insurer, we conclude that the counselor's misrepresentation did not plainly deprive the trial court of authority to impose restitution for the full value of the property loss.

    We nevertheless question whether the state can comply with its obligation to present evidence prior to

adjudication about the "nature and amount of the injury, loss or damage" under ORS 419C.450(1)(a) without identifying the victim who has suffered that injury. *See* ORS 419C.450(1)(b) ("[I]f the court is unable to find from the evidence presented [pursuant to ORS 419C.450(1)(a)] that a *victim* suffered injury, loss or damage, the court shall make a finding on the record to that effect. (Emphasis added.)); *L. G. S-S.*, 307 Or App at 212 (emphasizing that, at the time the youth was adjudicated, the state "had not even identified Safeco Insurance by name as a victim"). However, the statute on its face does not expressly impose that requirement, and youth has not asked us to engage in a statutory construction analysis, nor has either party developed such an argument to support their reading of ORS 419C.450 (1)(a), and we thus decline to do so in a plain-error posture. *See, e.g.*, *State v. Johnson*, 329 Or App 57, 63, 540 P3d 73 (2023) ("Both parties' arguments have persuasive weight. To conclusively resolve this legal issue of first impression, we would have to engage in an in-depth analysis of statutory, text, context, and legislative history to a degree that exceeds the bounds of plain-error review."). In conclusion, because it is neither obvious nor beyond reasonable dispute that the state's presentation of restitution evidence was untimely, we reject youth's argument that the juvenile court plainly erred by awarding restitution to State Farm Insurance.

In youth's second assignment, he argues that the juvenile court erred by imposing $12,808.98 in restitution because the evidence was insufficient to establish that youth was the "but for" cause of the entire loss. Youth acknowledges that the juvenile court found that youth was working "in concert" with the other individuals who participated in the theft. But he argues that that factual finding is speculative because the surveillance footage depicting the theft was never formally admitted into evidence. As we explain, we reject that argument as invited error.

Under the invited error doctrine, "a party who was actively instrumental in bringing about an alleged error cannot be heard to complain, and the case ought not to be reversed because of it." *State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274, *rev den*, 346 Or 590 (2009) (internal

quotation marks omitted). The purpose of that rule is to "ensure that parties who make intentional or strategic trial choices do not later blame the court if those choices prove to be unwise." *Id.* (internal quotation marks omitted). Here, youth was actively instrumental in bringing about the alleged error. Youth's counsel played the video for the juvenile court and affirmatively relied on it to support youth's argument that he should be responsible for only a portion of the victim's losses. Instead, the juvenile court relied on the video to find that youth had worked in concert with the other individuals involved, and thus, could be liable for the full loss. Youth does not dispute that the video's contents could support the court's finding that he had participated in a "coordinated theft." Nor does he argue that the juvenile court could not legally impose restitution for the full loss having made that finding. Rather, his sole argument is that, because the video was never admitted into evidence, the juvenile court's factual findings are unsupported by the record. Because youth invited that error, we reject youth's argument.

Affirmed.